## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**SCOTT WALKER, Individually and d/b/a**
**Maxwell & Walker Consulting Group, LLC and/or d/b/a**
**Precision Marketing Group, LLC;**
**STEVE SEYMOUR, a/k/a Stephen Seymour,**
**Individually and d/b/a Diamond Consulting**
**and/or d/b/a Precision Marketing Group, LLC;**
**KIRK D. LADNER, Individually and d/b/a The Ladner Group**
**and/or d/b/a Precision Marketing Group, LLC;**
**and PRECISION MARKETING GROUP, LLC**                    **PLAINTIFFS**



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

OCT 08 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

**VERSUS**                    CAUSE NO: 1:14cv381 KS-RHW

**JIMMY WILLIAMSON, Individually and/or**
**as the Director and President of Jimmy Williamson, P.C.**
**and/or d/b/a The Law Office of Michael Pohl, and in Partnership**
**and/or a Joint Venture with Michael Pohl and/or John and Jane**
**Does A-G; JIMMY WILLIAMSON, P.C., Individually and/or d/b/a**
**The Law Office of Michael Pohl, and in Partnership**
**and/or a Joint Venture with Michael Pohl and/or John and Jane**
**Does A-G; MICHAEL A. POHL, Individually and**
**d/b/a The Law Office of Michael A. Pohl, and in Partnership**
**and/or Joint Venture with Jimmy Williamson, Jimmy Williamson, P.C.,**
**and John and Jane Does A-G; and**
**JOHN AND JANE DOE A, B, C, D, E, F, AND G**                    **DEFENDANTS**

## COMPLAINT
## (JURY TRIAL REQUESTED)

  **COME NOW THE PLAINTIFFS,** SCOTT WALKER, Individually and d/b/a Maxwell

& Walker Consulting Group, LLC and/or d/b/a Precision Marketing Group, LLC; STEVE

SEYMOUR, Individually and d/b/a Diamond Consulting and/or d/b/a Precision Marketing

Group, LLC; KIRK D. LADNER, Individually and d/b/a The Ladner Group and/or d/b/a

Precision Marketing Group, LLC; and PRECISION MARKETING GROUP, LLC, by and

through undersigned counsel, and file this their Complaint against the Defendants, JIMMY

WILLIAMSON, Individually and/or as the Director and President of Jimmy Williamson, P.C.

and/or d/b/a The Law Office of Michael Pohl, and in Partnership and/or Joint Venture with

Michael Pohl and/or John and Jane Does A-G; JIMMY WILLIAMSON, P.C., Individually

and/or d/b/a The Law Office of Michael Pohl, and in Partnership and/or Joint Venture with Michael Pohl and/or John and Jane Does A-G; MICHAEL A. POHL, Individually and d/b/a The Law Office of Michael A. Pohl, and in Partnership and/or Joint Venture with Jimmy Williamson, Jimmy Williamson, P.C., and/or John and Jane Does A-G; and JOHN AND JANE DOE A, B, C, D, E, F, and G, as follows:

### PARTIES

1. Plaintiff, SCOTT WALKER, is an adult resident citizen of Ocean Springs, Jackson County, Mississippi.

2. Plaintiff, STEVE SEYMOUR, a/k/a Stephen Seymour, is an adult resident citizen of Kiln, Hancock County, Mississippi.

3. Plaintiff, KIRK D. LADNER, is an adult resident citizen of Diamondhead, Hancock County, Mississippi.

4. Plaintiff, PRECISION MARKETING GROUP, LLC, is a Mississippi Limited Liability Company with its principle place of business in Gulfport, Harrison County, Mississippi.  The only Members of Precision Marketing Group, LLC are Scott Walker and Kirk Ladner, each of whom, as noted above, is an adult resident citizen of the State of Mississippi.

5. Maxwell & Walker Consulting Group, LLC is a fictional entity, under whose name Plaintiff Scott Walker did some business related to the subject matter of this Complaint.

6. Diamond Consulting is a fictional entity under whose name Plaintiff Steve Seymour did some business related to the subject matter of this Complaint.

7. The Ladner Group is a fictional entity under whose name Plaintiff Kirk Ladner did some business related to the subject matter of this Complaint.

8. Unless otherwise specified, references in the Complaint to "Plaintiffs" will be a collective reference to all the named Plaintiffs.

2

9.  Defendant, JIMMY WILLIAMSON, is an adult resident citizen of the State of Texas, and a Texas Lawyer in good standing, enrolled in the Texas Bar with Bar Number 21624100, who, on information and belief, committed a tort and/or breached contracts in whole or in part in the State of Mississippi.  Mr. Williamson may be served with process in the manner provided by law.

10. JIMMY WILLIAMSON, P.C. is a Texas Professional Corporation, with its principal place of business located at 4310 Yoakum Blvd, Houston, Texas, 77006, which, on information and belief, committed a tort and/or breached contracts in whole or in part in the State of Mississippi.  On information and belief, Texas resident Jimmy Williamson, who serves as its designated Registered Agent, Director, and President, is the only member of the Professional Corporation.  Jimmy Williamson, P.C. may be served with process in the manner provided by law.

11. MICHAEL A. POHL is an adult resident citizen of the State of Texas, and a Texas Lawyer in good standing, enrolled in the Texas Bar with Bar Number 16086300, who committed a tort and/or breached contracts in whole or in part in the State of Mississippi.  Mr. Pohl may be served with process in the manner provided by law.

12. The Law Office of Michael A. Pohl is a fictional entity under whose name Defendants Michael Pohl and/or Jimmy Williamson and/or Jimmy Williamson P.C. did some business in the State of Mississippi related to the subject matter of this Complaint.

13. Defendants, JOHN AND JANE DOE A, B, C, D, E, F, AND G, are individuals and/or entities who caused or contributed to the injuries and damages of the Plaintiffs, but whose identities, and the scope of their liability, are presently unknown to the Plaintiffs. Plaintiffs will amend their Complaint to identify any and all John and Jane Doe Defendants and describe their liability, when their true identities and liability are ascertained.

3

14. Unless otherwise specified, each reference in the Complaint to "Defendants" will be a collective reference to all named Defendants.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under the provision of Title 28, United States Code § 1332, in that this suit is a civil action between citizens of different States wherein the matter and actual controversy exceeds the sum value of $75,000.00, exclusive of interest and costs.

16. Venue of this civil action is appropriate in this Court pursuant to Title 28, United States Code, § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Mississippi.

## FACTS AND CAUSES OF ACTION

17. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

18. On information and belief, at all material times, Jimmy Williamson, Jimmy Williamson, P.C. and Michael Pohl d/b/a The Law Office of Michael Pohl, were acting as a Partnership, Joint Venture, and/or as Co-Principals with regard to the business of obtaining and representing clients and resolving claims (for profit) arising from the Deepwater Horizon oil spill and British Petroleum's, and/or other tortfeasors', liability therefore.  Upon information and belief, John and Jane Doe Defendants A, B, C, D, E, F, and G were also involved in said Partnership and/or Joint Venture, but their true identities and liability are at present unknown.

19. Upon information and belief, at all times relevant to this matter, Defendants, Jimmy Williamson and Jimmy Williamson, P.C., and each of them, directly participated in the torts against the Plaintiff, and/or directed and controlled the actions of Defendant, Michael Pohl.

4

20. Upon information and belief, at all times relevant to this matter, Defendants, Jimmy Williamson and Jimmy Williamson, P.C., and each of them, had the right to direct and control Defendant Michael Pohl's actions with regard to entering into, and fulfilling contractual obligations under, the subject contracts; and other non-enumerated rights controlling the business and conduct of Defendant Michael Pohl.   Further upon information and belief, at all relevant times, Defendants, Jimmy Williamson and Jimmy Williamson, P.C., and each of them, were Co-Principals with each other and Michael Pohl d/b/a The Law Office of Michael Pohl and/or Pohl was in an agency relationship with Jimmy Williamson and/or Jimmy Williamson, P.C. regarding the fulfillment of obligations under the subject Contracts, and Jimmy Williamson and Jimmy Williamson, P.C., and each of them, directly participated in the torts against the Plaintiffs.

### The May 25, 2012 Contract

21. On May 25, 2012, Plaintiffs Scott Walker, d/b/a Maxwell & Walker Consulting Group, LLC and/or Precision Marketing Group, LLC and Steve Seymour, d/b/a Diamond Consulting and/or d/b/a Precision Marketing Group, LLC (collectively referred to as "the May 25, 2012 Group"); together with Terry Robinson, d/b/a Robinson Holdings, LLC, entered into a "Public Relations Consulting Agreement" and an "Operating Agreement" with Michael Pohl, d/b/a The Law Office of Michael Pohl (hereinafter these two agreements will be collectively referred to as "the May 25, 2012 Contract").  On information and belief, Michael Pohl drafted and executed the May 25, 2012 Contract in furtherance of the business of the BP oil spill representation Partnership and/or Joint Venture he had with Jimmy Williamson, Jimmy Williamson, P.C. and presently unidentified John and Jane Doe Defendants. This Contract remained in full force and effect through at least July 15, 2012.  (A copy of the May 25, 2012 Contract is attached and incorporated as "Exhibit 1")

5

22. Pursuant to the terms of the May 25, 2012 Contract, the individual members of the May 25, 2012 Group were retained to provide public relations and marketing services, in the State of Mississippi and elsewhere, designed to help Michael Pohl, and upon information and belief Jimmy Williamson, Jimmy Williamson P.C. and presently unidentified John and Jane Doe Defendants, obtain, represent, service and maintain clients who wished to pursue claims arising from the Deep Water Horizon oil spill. In exchange for those services, Pohl, on information and belief on behalf of the Defendants, agreed to pay hourly fees and expenses. It was agreed between Pohl, on information and belief on behalf of the Defendants, and the Plaintiffs that the members of the May 25, 2012 Group would collectively provide the contracted for marketing and public relations services ten (10) hours a day, seven (7) days a week. Pohl, on information and belief on behalf of all the Defendants, promised to pay hourly fees for those services at the rate $1,500 per hour (for the collective efforts of the May 25, 2012 Group and Terry Robinson), plus expenses.

23. It was agreed between Pohl, on information and belief on behalf of all the Defendants, and Plaintiffs that the total amount of hourly fees paid to the Plaintiffs pursuant to the terms of the May 25, 2012 Contract would be split with 40% of fees being paid to Maxwell & Walker Consulting Group, LLC / Scott Walker; 40% of the fees being paid to Diamond Consulting / Steve Seymour; and 20% of the fees being paid to Robinson Holdings, LLC / Terry Robinson. The May 25, 2012 Contract expressly referenced the Partnership / Joint Venture between Williamson and Pohl, referred to therein as "the British Petroleum representation agreement between Jimmy Williamson, P.C. and the Law Office of Michael Pohl."

24. Although the terms of the Contract drafted by Pohl, on information and belief on behalf of all the Defendants, suggest a fee splitting agreement between the lawyer Defendants and non-lawyer Plaintiffs; Plaintiffs' rights to collect hourly fees and expenses is not contingent upon

6

Defendants making any recovery on behalf of Defendants' BP oil spill clients and/or otherwise limited or affected by the amount of Defendants' recovery, if any. Any attempt by Defendants to so limit Plaintiffs' compensation is unenforceable as a matter of law. Pohl, on information and belief on behalf of all the Defendants, acknowledged and ratified the unenforceability and/or inapplicability of any clause or sentence in the subject Contract that purports to impose such a limitation through acceptance of Plaintiffs' services; acceptance of invoices for Plaintiffs' services, and partial payment for Plaintiff's services, as described herein.

25. At all material times Plaintiffs fulfilled all their obligations under the terms of the May 25, 2012 Contract. Additionally, and in the alternative, Plaintiffs, and each of them, materially and substantially changed their positions, gave up other employment opportunities, and spent many days and nights away from their families to devote huge quantities of their time to performing the services requested by Pohl, on information and belief on behalf of all the Defendants, in reliance on Pohl's, on information and belief on behalf of all the Defendants, promises of payment described above.

26. As a direct and proximate result of Plaintiffs' efforts in fulfilling their contractual duties under the May 25, 2012 Contract and/or in performing the marketing and public services required by Pohl, on information and belief on behalf of all the Defendants, in exchange for Pohl's, on information and belief on behalf of all the Defendants, promises to pay the amounts described above, one thousand one hundred and twenty seven (1,127) individuals and/or entities serviced by Plaintiffs signed contracts to be represented by Defendants, Jimmy Williamson, Jimmy Williamson, P.C. and/or Michael Pohl in efforts to recover compensation from BP and/or other responsible parties arising from damages caused by the Deepwater Horizon oil spill.

27. Pohl, on information and belief on behalf of all the Defendants, initially requested that the May 25, 2012 Group defer invoicing and collection of fees earned under the May 25, 2012

7

Contract for a period of time. The May 25, 2012 Group agreed to defer invoicing and collection efforts as an accommodation to Defendants. Thereafter, Pohl, on information and belief on behalf of all the Defendants, requested the May 25, 2012 Group to issue periodic invoices for specific numbers of hours (at the agreed upon rate of $1,500 an hour) directed by Pohl, without any documentation of the specific dates on which those hours were worked. Pohl's request was complied with by the Plaintiffs, and a total of 8 such periodic invoices seeking compensation for specific numbers of hours (at the agreed upon rate of $1,500 an hour) as directed by Pohl were issued (through Precision Marketing Group, LLC), with credit given against the total amounts due the Plaintiffs. Payment for each of those 8 invoices was accepted by Pohl, on information and belief on behalf of all the Defendants and each of them; thereby ratifying, on behalf of the Defendants and their Partnership / Joint Venture, Defendants' agreement to pay the May 25, 2012 Group $1,500 an hour for their services. A total of $59,750 was paid to the May 25, 2012 Group pursuant to these invoices, however no payment has been made for services due under the May 25, 2012 Contract since August 23, 2013.

28. It is presently unknown whether Pohl, on information and belief on behalf of all the Defendants, was asking for "hour specific" invoices in order to manipulate payments as recoverable expenses under specific BP claims resolutions; or whether Defendants, or any of them, charged these fees, or any portion thereof, as "expenses" to their BP clients and/or in connection with lode star expenses submitted for reimbursement through the Plaintiffs' Steering Committee (PSC) of the Deepwater Horizon BP Oil Spill multi-district litigation.

29. After Pohl, on information and belief on behalf of all the Defendants, failed to honor, and refused to pay, the remaining contractual obligations under the May 25, 2012 Contract, Defendants and Robinson Holdings / Terry Robinson entered into an agreement to resolve all claims that Robinson Holdings / Terry Robinson individually had against the Defendants arising

from Defendants' breach of the May 25, 2012 Contract. Nothing about that resolution or settlement resolved the claims of Scott Walker, d/b/a Maxwell & Walker Consulting Group, LLC and/or Precision Marketing Group, LLC and Steve Seymour, d/b/a Diamond Consulting and/or d/b/a Precision Marketing Group, LLC; nor did these Plaintiffs authorize Robinson Holdings / Terry Robinson to negotiate on their behalf and/or bind them to any settlement resolution. Although an individual settlement was allegedly reached with Robinson; it was not ratified nor participated in by, nor is it enforceable against, these Plaintiffs.

30. For the period of time May 25, 2012 through July 15, 2012 the members of the May 25, 2012 Group worked a total of 520 hours, for which Pohl, on information and belief on behalf of all the Defendants, was required to reimburse them $780,000, plus expenses under the terms of the May 25, 2012 Contract. Giving credit for the 20% of said fees the May 25, 2012 Contract apportioned to Robinson Holdings, LLC / Terry Robinson (in light of that party's alleged settlement and release of his / its individual claims and potential claims against these Defendants arising out of said Contract), and for 80% (these Plaintiffs' designated share) of the periodic payments totaling $59,750, the total amount of hourly fees due to Plaintiff Scott Walker, d/b/a Maxwell & Walker Consulting Group, LLC and/or Precision Marketing Group, LLC and Steve Seymour, d/b/a Diamond Consulting and/or d/b/a Precision Marketing Group, LLC, to be split evenly between them pursuant to the apportionment spelled out in the Contract and/or agreed upon by the parties, is $576,200, plus reimbursement of expenses. Pohl, on information and belief on behalf of all the Defendants, has failed and refused to pay these amounts, which are due and owing under the May 25, 2012 Contract; and/or which were promised to Plaintiffs in exchange for the services they rendered in reliance thereon.

### The July 15, 2012 Contract

31. On July 15, 2012, Plaintiffs Scott Walker, Steve Seymour, and Kirk Ladner, all d/b/a Precision Marketing Group, LLC (hereinafter "the July 15, 2012 Group"), entered into an "Operating Agreement" with Michael Pohl, d/b/a The Law Office of Michael Pohl. (hereinafter referred to as "the July 15, 2012 Contract").  On information and belief, Michael Pohl drafted and executed the July 15, 2012 Contract in furtherance of the business of the BP oil spill representation Partnership and/or Joint Venture he had with Jimmy Williamson, Jimmy Williamson, P.C. and presently unidentified John and Jane Doe Defendants.  This Contract remains in full force and effect.  (A copy of the July 15, 2012 Contract is attached and incorporated as "Exhibit 2")

32. Pursuant to the terms of the July 15, 2012 Contract, the members of the July 15, 2012 Group were retained to provide public relations and marketing services, in the State of Mississippi and elsewhere, designed to help Michael Pohl, and on information and belief Jimmy Williamson, Jimmy Williamson P.C. and presently unidentified John and Jane Doe Defendants obtain, represent, service and maintain clients with claims arising from the Deep Water Horizon oil spill incident. In exchange for those services, Pohl, on information and belief on behalf of all the Defendants, agreed to pay hourly fees and expenses.  Pohl, on information and belief on behalf of all the Defendants, promised to pay Plaintiffs an hourly rate of $1500 per hour (for the collective efforts of the Group), 10 hours a day, 7 days a week, plus expenses.

33. As a direct and proximate result of Plaintiffs', and each of their, public relations and marketing efforts, undertaken pursuant to the July 15, 2012 Contract and/or in reliance on the promises and direction, and under the supervision and control, of the Defendants, many seafood restaurants and seafood dealers and other oil spill claimants in Maryland, North Carolina, the District of Columbia, Pennsylvania, Virginia, Louisiana, Mississippi, Florida, and Alabama

10

signed contracts to be represented by the Partnership / Joint Venture of Michael Pohl / Jimmy Williamson / Jimmy Williamson, P.C. related to their BP oil spill claims.

34. The Plaintiffs and Pohl, on information and belief on behalf of all the Defendants, agreed that the total amount of hourly fees paid to the Plaintiffs pursuant to the terms of the July 15, 2012 Contract, and/or pursuant to Pohl's, on information and belief on behalf of all the Defendants, promises and Plaintiffs' reliance thereon, would be split evenly between Scott Walker, Steve Seymour and Kirk Ladner, with 33 1/3 % of said fees going to each of these Plaintiffs. The July 15, 2012 Contract expressly referenced the Partnership / Joint Venture between Williamson and Pohl, referred to therein as "the British Petroleum representation agreement between Jimmy Williamson, P.C. and the Law Office of Michael Pohl."

35. Although the terms of the Contract drafted by Pohl, on information and belief on behalf of all the Defendants, suggest a fee splitting agreement between the lawyer Defendants and non-lawyer Plaintiffs; Plaintiffs' rights to collect hourly fees and expenses is not contingent upon Defendants making any recovery on behalf of Defendants' BP oil spill clients and/or otherwise limited or affected by the amount of Defendants' recovery, if any. Any attempt by Defendants to so limit Plaintiffs' compensation is unenforceable as a matter of law. Pohl, on information and belief on behalf of all the Defendants, has acknowledged and ratified the unenforceability and/or inapplicability of any clause or sentence in the subject Contract that purports to impose such a limitation through Pohl's, on information and belief on behalf of all the Defendants, acceptance of Plaintiffs' services; acceptance of invoices for Plaintiffs' services, and partial payment for Plaintiffs' services, as described herein.

36. At all material times Plaintiffs fulfilled all their obligations under the terms of the July 15, 2012 Contract. Additionally, and in the alternative, Plaintiffs, and each of them, materially and substantially changed their positions, and gave up other employment opportunities, to devote

11

huge quantities of their time to performing the services requested by Pohl, on information and belief on behalf of all the Defendants, in reliance on Pohl's promises of payment described above.

37. As a direct and proximate result of Plaintiffs' efforts in fulfilling their contractual duties and/or in performing the marketing and public relations services required by Pohl, on information and belief on behalf of all the Defendants, in exchange for Pohl's promises to pay the amounts described above, nine thousand, four hundred and eighty six (9,486) additional individuals and/or entities serviced by Plaintiffs signed contracts to be represented by Defendants, Jimmy Williamson, Jimmy Williamson, P.C., Michael Pohl, and/or John and Jane Doe Defendants A-G in efforts to recover compensation from BP and/or other responsible parties arising from damages caused by the Deepwater Horizon Oil Spill.

38. Pohl, on information and belief on behalf of all the Defendants, initially requested that the July 15, 2012 Group defer invoicing and collection of fees earned under the July 15, 2012 Contract for a period of time.  The July 15, 2012 Group agreed to defer invoicing and collection efforts as an accommodation to Defendants.  Thereafter, in early January, 2014, Pohl, on information and belief on behalf of all the Defendants, asked the Plaintiffs to provide invoices, broken down on a monthly basis, showing the total amount of hours worked and the total amount of hourly fees due under the July 15, 2012 Contract for the time period July 15, 2012 through December 31, 2013.

39. Pursuant to Pohl's, on information and belief on behalf of all the Defendants, request, Plaintiffs sent the requested invoices to Pohl on January 21, 2014, which invoices confirmed that for the period of time July 15, 2012 through December 31, 2013 the members of the July 15, 2012 Group worked a total of 5,350 hours, for which Pohl, on information and belief on behalf of all the Defendants, was required to pay the Plaintiffs $8,025,000 in hourly fees, plus expenses,

under the terms of the July 15, 2012 Contract and/or pursuant to the Pohl's, on information and belief on behalf of all the Defendants, promises and Plaintiffs' substantial changes in position in reliance thereon. By email dated January 22, 2014, Pohl, on information and belief on behalf of all the Defendants, acknowledged receipt of the July 15, 2012 through December 31, 2013 invoices, and asked Plaintiffs to "keep a running total".

40. Pohl, on information and belief on behalf of all the Defendants, also ratified that the tendered invoices documented numbers of hours and hourly rates that were anticipated and required by the July 15, 2012 Contract and/or the oral agreements between Pohl, on information and belief on behalf of all the Defendants, and the Plaintiffs.  On September 9, 2013, Pohl, on information and belief on behalf of all the Defendants, made a $50,000 payment to Plaintiffs. After Pohl received the invoices Pohl, on information and belief on behalf of all the Defendants, requested in January, 2014; Pohl, on information and belief on behalf of all the Defendants, asked Plaintiffs to credit the September 9, 2013 payment toward the Invoice for July 15 – July 31, 2012; which invoice was for 170 hours / $255,000. On March 9, 2014, Pohl, on information and belief on behalf of all the Defendants, made an additional $50,000 payment toward the July, 2012 invoice.  On or about Sunday, June 1, 2014, Pohl, on information and belief on behalf of all the Defendants, told Steve Seymour, Scott Walker and Kirk Ladner that he had retained Chris Flood, a Houston based Texas attorney, to represent certain of Pohl's and Williamson's interests related to the BP oil spill claims process. Pohl told Plaintiffs that Mr. Flood would be contacting them, and asked Plaintiffs to please talk with Mr. Flood.  On or about Wednesday, June 4, 2014, Chris Flood called Steve Seymour on behalf of the Defendants.  During this conversation, Chris Flood repeatedly assured Seymour and the Plaintiffs that the subject Contracts, and the services provided by the Plaintiffs pursuant to same, are legitimate, legal and enforceable; and repeatedly assured Seymour that Seymour, Walker and Ladner were going to be paid what they were owed

under the subject Contracts. On June 21, 2014, Pohl, on information and belief on behalf of all the Defendants, made a third payment of $50,000 toward the July, 2012 Invoice – leaving a balance due of $105,000 on the July 15 – July 31, 2012 invoice. Pohl, on information and belief on behalf of all the Defendants, requested receipts for these payments, which receipts were provided by the Plaintiffs and which showed each of these $50,000 payments credited against the July 15 – July 31, 2012 invoice. Those receipts were accepted, and the services and agreements represented therein ratified, by Pohl, on information and belief on behalf of all the Defendants.

41. It appears that Pohl, on information and belief on behalf of all the Defendants, may have been trying to string Plaintiffs along with only partial payments of monies due under the subject contracts in an effort to allow applicable statutes of limitation for claims Plaintiffs have against the Defendants to run; and thus avoid paying Plaintiffs the full amount due for the services they rendered.

42. Giving credit for the three (3)  $50,000 payments made toward the July 15 - July 31, 2012 invoice, there is a balance of hourly fees due under the July 15, 2012 Contract for the time period of July 15, 2012 through December 31, 2013 in the amount of $7,875,000, plus expenses. Defendants have failed and refused to pay these amounts, which are due and owing under the July 15, 2012 Contract; and/or pursuant to the promises of Pohl, on information and belief on behalf of all the Defendants, on which the Plaintiffs relied to substantially change their positions and provide the services requested.

### Partnership / Joint Venture / Co-Principals

43. On information and belief, at all material times, Jimmy Williamson, Jimmy Williamson, P.C. and Michael Pohl, individually and d/b/a The Law Office of Michael Pohl formed and were acting as a Partnership and/or Joint Venture for the purposes of conducting the business of

representing clients and resolving claims (for profit) arising from the Deepwater Horizon Oil Spill.

44. At the direction and under the direct supervision and control of Michael Pohl and Jimmy Williamson, Plaintiffs' marketing and public relations efforts included providing individuals and entities seeking representation in relation to the BP oil spill with a letter from Michael Pohl extolling the virtues of Pohl's self described "partner" in the BP oil spill related claims settlement process and/or litigation, Jimmy Williamson, whom Pohl described as having taken over 50 of the 300 depositions taken in Phase I of the BP litigation, and as being selected as one of 10 lawyers who would actually try the cases against BP. The letter went on to state that Pohl and Williamson had "assembled a team of accountants and workers to process and evaluate claims ...." (See letter dated August 23, 2012 attached as "Exhibit 3"). Pursuant to Pohl's and Williamson's direction, Plaintiffs also distributed flyers extolling the litigation experience of Williamson, and contracts of employment whereby BP oil spill claimants could choose to employ Williamson and Pohl to jointly represent them on their claims.

45. On information and belief, Jimmy Williamson, Jimmy Williamson, P.C. and Michael Pohl, individually and d/b/a The Law Office of Michael Pohl, shared profits obtained from resolving, and/or expect to share profits obtained from resolving the as yet unresolved (if any), oil spill claims of the 10,613 individuals and entities who chose to be represented by Defendants on their BP oil spill claims as a direct and proximate result of the public relations and marketing efforts of the Plaintiffs under May 25, 2012 and July 15, 2012 Contracts and/or in reliance upon the promises of the Defendants.

46. On information and belief, the $209,750.00 of hourly fees that has been paid to Plaintiffs under the subject Contracts, and some amount of out of pocket expenses that were advanced by

the Pohl, were made subject to the "the British Petroleum representation agreement between Jimmy Williamson, P.C. and the Law Office of Michael Pohl."

47. On information and belief, Pohl's execution of the May 25, 2012 and July 15, 2012 Contracts, and any and all additional conduct of Pohl and Williamson / Jimmy Williamson, P.C. related to those Contracts and/or the business of representing clients and resolving claims related to the Deepwater Horizon oil spill, were in furtherance of the business for which the Partnership and/or Joint Venture between Jimmy Williamson, Jimmy Williamson, P.C., Michael Pohl, individually and d/b/a The Michael Pohl Law Firm, and as yet unidentified John and Jane Doe Defendants were formed, and/or were made pursuant to the express and/or implied authorization of that Partnership and/or Joint Venture and/or Jimmy Williamson. Additionally, and in the alternative, at all material times the Plaintiffs, and each of them, reasonably believed that each act of Pohl and Williamson related to the business of representing clients and resolving claims related to the Deepwater Horizon oil spill was authorized by the Partnership, Joint Venture, and/or Pohl and Williamson.

48. Although he chose to be a semi-silent partner, Jimmy Williamson / Jimmy Williamson, P.C., on information and belief, directed, controlled and/or directly participated in the conduct of Michael Pohl, individually and d/b/a The Law Office of Michael Pohl, related to the subject Contracts and the business of representing clients and resolving claims related to the Deepwater Horizon oil spill. Jimmy Williamson also personally directed and controlled many of the actions of the Plaintiffs with regard to their public relations and marketing efforts related to Defendants' representation of individuals and entities wishing to pursue BP oil spill claims.

49. The following are some limited examples of the manner in which Williamson exerted direct direction, supervision and control over the conduct of Pohl and/or the Plaintiffs under the subject Contracts; and acknowledged that services under the subject Contracts were intended to

benefit Williamson. During a Chartered Plane flight from Gulfport, Mississippi to Easton, Maryland (the cost of which was reimbursed by Williamson) to market Pohl's and Williamson's services to crab houses in Maryland on or about May 29, 2012, Jimmy Williamson told Scott Walker, Steve Seymour and Kirk Ladner "if the three of you continue signing me clients like this, you will each be very rich, very soon." By email correspondence (forwarded to Plaintiffs) dated November 19, 2012, Jimmy Williamson made it very clear that persons contracted to provide public relations / marketing services such as those provided by the Plaintiffs who did not demonstrate a sense of urgency in fulfilling those services would be "off the team and forgotten". By subsequent email correspondence to Pohl and these Plaintiffs dated January 22, 2013, Williamson identified specific individuals and entities involved in the seafood business who were seeking representation on claims related to the BP oil spill, and urged these Plaintiffs to up their marketing efforts lest Williamson "lose the right to pursue" those claims. By email correspondence dated December 26, 2012, Williamson provided Pohl and these Plaintiffs spreadsheets identifying 195 entities and individuals, who on information and belief had communicated to Williamson an interest in being represented by Williamson on BP oil spill claims and/or who were already being represented by Defendants with regard to same, and urged that information necessary to make presentment in the BP settlement administrative claims procedure must be collected from those identified as soon as possible in light of an upcoming January 18th deadline for presentment.

## Other Contracts / Non Waiver

50. Plaintiffs have other contracts for marketing / public relations services in place with Pohl (on information and belief in partnership or joint venture with others as described below) which are not made the subject of this Complaint. Those contracts include, but are not limited to:

17

a. An April 19, 2012 "Services Agreement" and May 9, 2012 "Operating Agreement" between Maxwell & Walker Consulting Group, LLC / Scott Walker / Robert Maxwell and Michael Pohl (joint venturing and co principal with Jimmy Williamson and Jimmy Williamson, P.C.) related to public relations / marketing / investigative services with regard to BP oil spill claims;

b. A July 1, 2014 "Operating Agreement" between GM Settlement Verification Team, LLC / Kirk Ladner / Scott Walker and Michael Pohl related to public relations / marketing / investigative services with regard to every case in which the "GM Settlement Verification Team" / Scott Walker / Kirk Ladner is retained in GM related rollover / products liability cases.

c. An April 24, 2013 "Operating Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl related to public relations / marketing / investigative services with regard to vehicle accidents and/or death;

d. A June 20, 2014 "Retention of Services Agreement" between Claim Verification Team / The Helping Hands Group, LLC / Kirk Ladner / Scott Walker and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to a specific catastrophic accident;

e. A June 20, 2014 "Retention of Services Agreement" between Claim Verification Team / The Helping Hands Group, LLC / Kirk Ladner / Scott Walker and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

f.  A May 3, 2014 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic event;

g.  A February 20, 2014 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

h.  A January 7, 2014 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

i.  An October 28, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

j.  An October 28, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related

to public relations / marketing / investigative services with regard to another specific catastrophic accident;

k.  A July 30, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

l.  A July 12, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

m. A July 8, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

n.  A July 8, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

o.  An April 30, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing

and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

    p.  An April 29, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident;

    q.  An April 29, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident; and

    r.  An April 24, 2013 "Retention of Services Agreement" between Precision Marketing Group, LLC / Kirk Ladner / Scott Walker / Steve Seymour and Michael Pohl (joint venturing and co principal with Rob Ammons / The Ammons Law Firm, LLP) related to public relations / marketing / investigative services with regard to another specific catastrophic accident.

51. Consistent with the ordinary practice between these parties, many of these Contracts expressly state that services by the Group will be compensated at the rate of $1,500 per hour.

52. Although they are not made the subject of this Complaint, Plaintiffs affirmatively reserve any and all rights and/or causes of action they may have with respect to each of the contracts identified above.

## CHOICE OF LAW

53. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

54. Neither the May 25, 2012 Contract nor the July 15, 2012 Contract specify the State law under which their terms shall be interpreted and claims thereunder adjudicated. Each of those contracts was entered into in the State of Mississippi, and promises to pay Mississippi residents for services to be rendered in Mississippi and elsewhere. Additionally, and in the alternative, the promises made to Plaintiffs by Defendants upon which Plaintiffs relied to substantially change their positions in order to provide the services requested by Defendants in expectation of being compensated as set forth herein above, were made to Plaintiffs by Defendants in Mississippi.

55. Considering a maximization of relevant contacts, Mississippi has the most significant relationship to the underlying events and parties and/or the greatest concern with the specific issues (enforcing the contractual rights of Mississippi Residents and a Mississippi limited liability company under written contracts negotiated and executed in Mississippi and/or oral contracts made in Mississippi) with respect to the liabilities and rights of the parties to this action. As such, Mississippi law applies to all substantive issues of law raised by this Complaint and/or any and all defenses thereto.

## COUNT I: JOINT VENTURE / PARTNERSHIP / CO-PRINCIPALS

56. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

57. As described in the factual assertions above, on information and belief, Jimmy Williamson, Jimmy Williamson, P.C., Michael Pohl, individually and d/b/a The Law Office of Michael Pohl, and as yet unidentified John and Jane Doe Defendants formed, and at all material times were acting as, a Partnership, Joint Venture, and/or as Co-Principals with regard to the

22

business of representing clients and resolving claims (for profit) arising from the Deepwater Horizon oil spill.

58. Pursuant to common law and statutory law, each of the members of the described Partnership and/or Joint Venture is an agent of the Partnership and/or Joint Venture for the purpose of conducting its business; and the act of any partner, including but not limited to Pohl's acts of signing the subject contract and Pohl's and Williamson's promises of compensation in return for the services rendered by the Plaintiffs, binds the Partnership / Joint Venture and each member thereof.  Also pursuant to statutory and common law, Pohl, Williamson, Jimmy Williamson, P.C. and as yet unidentified John and Jane Doe Defendants are each individually, and jointly and severally, liable for any and all injuries and damages of the Plaintiffs described in this Complaint.

59. Additionally, and in the alternative, as set forth with particularity above, on information and belief Jimmy Williamson and Jimmy Williamson, P.C exercised sufficient dominion and/or control over Michael Pohl and/or participated directly with Pohl such that Pohl was said Defendants' agent and/or was a co-principal with said Defendants, such that Defendants, and each of them, are individually and jointly and severally liable for any and all damages and injuries of the Plaintiffs described herein.

## COUNT II:  BREACH OF CONTRACT, BAD FAITH, AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

60. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

61. As described with particularity above, Plaintiffs fulfilled all their duties and obligations under the May 25, 2012 and July 15, 2012 Contracts.  Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, and each of them, had a duty under the subject Contracts to pay Plaintiffs

$1,500 an hour, 10 hours a day, 7 days a week; and to reimburse the Plaintiffs' incurred expenses for services rendered pursuant to the subject Contracts.

62. Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, and each of them, breached their duties under the subject Contracts, and each of them, unreasonably delayed payment of fees and expenses due thereunder, and simply refused to pay the majority of fees and expenses due thereunder without any legitimate or arguable reason.

63. Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, had a duty to respect and honor Plaintiffs' rights under the subject contracts and not recklessly disregard those rights, and at all material times to treat Plaintiffs with good faith and fair dealing, implied by law. As described with particularity above, Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, and each of them, breached those duties.

64. Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, and each of them, are liable for the following acts and/or omissions:

    a. Negligent, grossly negligent and/or reckless failure to pay Plaintiffs hourly fees and expenses due under the May 25, 2012 Contract in a timely fashion, and unreasonably delaying payment of said fees and expenses;

    b. Negligent, grossly negligent and/or reckless failure to pay Plaintiffs hourly fees and expenses due under the July 15, 2012 Contract in a timely fashion, and unreasonably delaying payment of said fees and expenses;

24

c.  Negligent, grossly negligent and/or reckless refusal to pay Plaintiffs the majority of hourly fees and expenses due under the May 25, 2012 Contract;

d.  Negligent, grossly negligent and/or reckless refusal to pay Plaintiffs the majority of hourly fees and expenses due under the July 15, 2012 Contract;

e.  Acting in conscious, gross and/or reckless disregard for the rights of the Plaintiffs, and each of them; and

f.  Acting wrongfully in other respects to be shown upon a trial of this cause.

65. The actions of Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, and each of them, constitute breach of contract, bad faith breach of contract, breach of the duty of good faith and fair dealing, reckless disregard, negligence and/or gross negligence, rendering said Defendants liable to the Plaintiffs, and each of them, for actual, compensatory and punitive damages.

66. As a direct, proximate and foreseeable consequence of Pohl's, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, breach of contract, bad faith breach of contract, breach of the duty of good faith and fair dealing, reckless disregard, negligence and/or gross negligence, Plaintiffs were injured and damaged as described throughout this Complaint, for all of which Plaintiffs, and each of them, are entitled to be compensated by the Defendants, jointly and severally.  In addition to actual damages due in the amount of hourly fees and expenses due under the terms of the subject contracts, described above, it was foreseeable to Pohl, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the individual members of same, that Plaintiffs and each of them would suffer and/or incur, and Plaintiffs and each of them did suffer and incur, emotional

distress and anxiety as a direct and proximate result of Defendants' misconduct and failure to honor their contractual obligations to the Plaintiffs, and attorneys' fees and expenses for having to file suit to enforce their contractual rights. Under applicable law, Plaintiffs are entitled to be compensated by the Defendants for all of these damages, and other incidental damages incurred as a result of having to pursue this litigation.

67. Pohl's, and the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented on information and belief and the members of same, and each of their, bad faith conduct described in the preceding paragraphs rises to the level of an independent tort, and/or represents reckless disregard for the rights of the Plaintiffs, and each of them; such that Plaintiffs, and each of them, are entitled to recover punitive damages from the Defendants, and each of them, in an amount sufficient to punish the Defendants and serve as an example to deter these Defendants and similarly situated individuals and entities from engaging in such conduct in the future; and to reward Plaintiffs for bringing Defendants' misconduct to light.

## COUNT III: QUANTUM MERUIT AND UNJUST ENRICHMENT

68. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

69. Additionally, and in the alternative, Plaintiffs are entitled to recover fees and expenses from the Defendants pursuant to the theories of Quantum Meruit / Unjust Enrichment.

70. As alleged with particularly above, at all material times Plaintiffs provided valuable services to Defendants, and each of them, in connection with Defendants' Joint Venture / Partnership business of representing and resolving the claims of individuals and entities harmed and/or allegedly harmed by the Deepwater Horizon oil spill.

71. Defendants readily accepted the services rendered by the Plaintiffs. As a direct and proximate result of Plaintiffs' efforts, Defendants represented at least 10,613 individuals and

entities harmed and/or allegedly harmed by the Deepwater Horizon oil spill.  On information and belief, Defendants and each of them reaped substantial profits from representing said individuals and entities in administrative claims arising from the BP oil spill; and/or will reap substantial profits in the future in administrative claims and/or possible legal representation.  By way of limited example, on or about January 15, 2013 Defendants determined that a "midpoint estimate" of the value of one single claim for a municipality who signed a BP oil spill related contract with the Defendants as a direct and proximate result of the marketing and public relations services of the Plaintiffs was "$24.84 million in 2012 dollars".  Plaintiffs do not know as of the time of filing this Complaint whether Defendants reaped additional profits by allocating fees and/or expenses due or owing to the Plaintiffs by arbitrarily and/or fraudulently allocating portions of said fees and/or expenses to "expenses" incurred with regard to representation of individual oil spill clients and/or in lodestar expenses submitted in connection with the multi district litigation, and by thus "recovering" said fees and/or expenses from individual oil spill clients.  Discovery in this case is expected to answer those questions.

72. At all relevant times, when Defendants accepted, used and enjoyed the fruits of Plaintiffs' services; and Pohl, and on information and belief the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented and the individual members of same, knew or reasonably should have known that Plaintiffs expected to be paid collective hourly fees of $1,500 an hour, 10 hours a day, 7 days a week, plus reimbursement of incurred expenses, for providing those services that were accepted, used and enjoyed by the Defendants.

73. The profits Defendants earned and/or are expected to earn in the future are due, in large part, to the efforts of the Plaintiffs. Defendants expected Plaintiffs to perform the services they did provide so Defendants could obtain large profits; and Pohl, and on information and belief the Partnership / Joint Venture with Williamson / Williamson P.C. whose interests he represented

and the individual members of same, expected Plaintiffs to rely on Pohl's promises to pay Plaintiffs fees of $1,500 an hour, 10 hours a day, 7 days a week, plus reimbursement of incurred expenses, for providing those services.

74. Defendants have not paid the Plaintiffs the fees and expenses promised in return for the services that were provided, in good faith, by the Plaintiffs. Defendants, and each of them, were thus unjustly enriched due to the efforts and services of the Plaintiffs. Justice, good conscience, sound public policy and applicable law require that Defendants not be thus unjustly enriched, and that Defendants be required to disgorge their ill gotten profits earned at Plaintiff's expense and turn them over to the Plaintiffs to whom in good conscious they belong.

75. Pursuant to the doctrines of Quantum Meruit and/or Unjust Enrichment, Plaintiffs, and each of them, are entitled to be compensated by the Defendants, jointly and severally, for all of the damages set forth throughout this Complaint.

## COUNT IV:  FRAUD / FRAUDULENT INDUCEMENT / FRAUDULENT MISREPRESENTATION

76. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

77. As specifically alleged above, Pohl, on information and belief acting on behalf of the Joint Venture / Partnership of Jimmy Williamson, Jimmy Williamson, P.C. and each of the individual members thereof, made inducements and representations to the Plaintiffs, including the promised consideration for marketing / public relations services in relation to the business of representing clients in BP oil spill claims, which representations were false and material, and which were known by the Defendants to be false.

78. As specifically alleged above, in making such false representations, Pohl, on information and belief acting on behalf of the Joint Venture / Partnership of Jimmy Williamson, Jimmy Williamson, P.C. and each of the individual members thereof, intended to induce the Plaintiffs,

and each of them, to abandon other employment opportunities and to devote huge quantities of their time to marketing the Joint Venture's / Partnership's services to individuals and entities who expressed an interest in being represented on BP oil spill claims, and to servicing and maintaining those clients' relationships with and loyalty to the Joint Venture / Partnership of Williamson and Pohl once represented by Defendants, in the manner reasonably contemplated by Defendants.

79. As specifically alleged above, Plaintiffs were unaware of the falsity of Pohl, on information and belief acting on behalf of the Joint Venture / Partnership of Jimmy Williamson, Jimmy Williamson, P.C. and each of the individual members thereof, representations, but substantially changed their positions and provided the services requested by Defendants in the manner reasonably contemplated by Defendants in reliance on Defendants' representations of compensation as being truthful.

80. As specifically alleged above, at all material times Plaintiffs, and each of them, were justified in expecting honesty, good faith and fair dealing from the Defendants; and had a right to rely on Pohl's, on information and belief acting on behalf of the Joint Venture / Partnership of Jimmy Williamson, Jimmy Williamson, P.C. and each of the individual members thereof, representations.

81. As specifically alleged above and below, Plaintiffs, and each of them, were damaged, and said damages were proximately caused by, Pohl's, on information and belief acting on behalf of the Joint Venture / Partnership of Jimmy Williamson, Jimmy Williamson, P.C. and each of the individual members thereof, conduct and Plaintiffs' reasonable reliance on Defendants' representations.

82. As a result of Defendants' fraudulent conduct, Plaintiffs, and each of them, are entitled to all actual, compensatory, extra contractual, punitive and consequential damages set forth throughout this Complaint.

## COUNT V: AIDING AND ABETTING FRAUD / FRAUDULENT INDUCEMENT

83. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

84. John and Jane Doe Defendants A, B, C, D, E, F, and G may include individuals and/or entities who conspired with Defendants in conducting the affairs and conduct described above of the Deepwater Horizon oil spill claims business in which the Defendants formed the aforementioned Partnership and/or Joint Venture.

85. To the extent said John and Jane Doe Defendants aided and/or abetted in the wrongful and fraudulent acts of the Defendants, and/or shared in the unjust enrichment of the Defendants described above, said Jane and John Doe Defendants, on information and belief, proximately caused or contributed to the injuries and damages of the Plaintiffs, and each of them, described throughout this Complaint. Said damages were, or should have been, foreseeable to said Jane and John Doe Defendants for aiding and/or abetting the wrongful and fraudulent acts of the Defendants.

86. Said John and Jane Doe Defendants, and each of their, conduct described in the preceding paragraphs rises to the level of an independent tort, and/or represents reckless disregard for the rights of the Plaintiffs, and each of them, such that Plaintiffs, and each of them, are entitled to recover punitive damages from said John and Jane Doe Defendants, and each of them, in an amount sufficient to punish said Defendants and serve as an example to deter said Defendants and similarly situated individuals and entities from engaging in such conduct in the future; and to reward Plaintiffs for bringing said Defendants' misconduct to light.

## COUNT VI: WAIVER AND EQUITABLE ESTOPPLE

87. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

88. As alleged with particularity above, Plaintiffs at all material times believed and relied upon Pohl's, on information and belief acting on behalf of the Joint Venture / Partnership of Jimmy Williamson, Jimmy Williamson, P.C. and each of the individual members thereof, multiple representations and promises that hourly fees of $1,500 per hour, 10 hours per day, 7 days per week plus reimbursement of expenses would be paid by the Defendants, and in such reliance performed all things necessary and reasonable for significant profits to be earned by Defendants and their Partners / Joint Venturers in representing and resolving the claims of BP oil spill clients.

89. As alleged with particularity above, Defendants' promises caused Plaintiffs, and each of them, to materially and substantially change their positions in reliance thereon.

90. As described with particularity above, Plaintiffs' belief in and reliance upon the multiple representations and promises of the Defendants, and each of them, ultimately resulted in substantial damages to the Plaintiffs, and each of them, and significant profits to the Defendants, and each of them.

91. As a result, Defendants', and each of their, acts and omissions are so egregious as to justify the application of the doctrines of equitable estoppel and waiver. Defendants have effectively waived, and/or should be estopped from asserting, defenses they may otherwise have asserted to the claims of the Plaintiffs herein.

## DAMAGES

92. By reference, each of the preceding paragraphs are adopted and made part of the forgoing as if fully incorporated herein.

31

93. As a direct and proximate result of the conduct, actions, inactions, and behavior of the Defendants, and each of them, as more fully set forth in the preceding paragraphs, Plaintiffs, and each of them, have suffered, and are entitled to receive from the Defendants, damages caused by the Defendants' misconduct. The damages suffered by the Plaintiffs, for which Defendants, jointly and severally, should be required to compensate the Plaintiffs, include, but are not limited to:

a. Hourly fees due and owing, and incurred, pursuant to the May 25, 2012 Contract and/or the promises made by Defendants and the detrimental reliance of the Plaintiffs made in relation thereto in the liquidated amount of $576,200.

b. Pre-judgment and post-judgment interest in the amount of 8% per year, and/or such other amount deemed appropriate by the Court, on the liquidated hourly fees due and owing under the May 25, 2012 Contract in the amount of $576,200, to run from July 15, 2012 until paid in full;

c. Hourly fees due and owing, and incurred, pursuant to the July 15, 2012 Contract and/or the promises made by Defendants and the detrimental reliance of the Plaintiffs made in relation thereto in the liquidated amount of $7,875,000.

d. Pre-judgment and post-judgment interest in the amount of 8% per year, and/or such other amount deemed appropriate by the Court, on the liquidated hourly fees due and owing under the July 15, 2012 Contract in the amount of $7,875,000, to run from January 21, 2014 until paid in full;

e. Expenses of the Plaintiffs due and owing, and incurred, pursuant to the May 25, 2012 Contract and/or the promises made by Defendants and the detrimental reliance of the Plaintiffs made in relation thereto in an amount to be determined by a Jury, plus pre-and post judgment interest thereon from the date incurred through the date paid in full;

f. Expenses of the Plaintiffs due and owing, and incurred, pursuant to the July 15, 2012 Contract and/or the promises made by Defendants and the detrimental reliance of the Plaintiffs made in relation thereto in an amount to be determined by a Jury, plus pre-and post judgment interest thereon from the date incurred through the date paid in full;

g. Compensation for emotional distress suffered by the Plaintiff, Scott Walker, as direct and proximate result of Defendants' misconduct and breach of the May 25 and July 15, 2012 Contracts, in an amount to be determined by a Jury and pre- and post-judgment interest thereon in the amount of 8% per anum;;

h. Compensation for emotional distress suffered by the Plaintiff, Steve Seymour, as direct and proximate result of Defendants' misconduct and breach of the May 25 and July 15, 2012 Contracts, in an amount to be determined by a Jury and pre- and post-judgment interest thereon in the amount of 8% per anum;

i. Compensation for emotional distress suffered by the Plaintiff, Kirk D. Ladner, as direct and proximate result of Defendants' misconduct and breach of the July 15, 2012 Contract, in an amount to be determined by a Jury and pre- and post-judgment interest thereon in the amount of 8% per anum;

j. Attorneys' fees and expenses, and incidental costs, incurred by the Plaintiffs, and each of them, for having to pursue litigation to enforce their rights under the subject Contracts, and each of them, in an amount to be determined by a Jury and/or by the Court, and pre- and post-judgment interest thereon in the amount of 8% per anum; and

k. All other damages to be shown at the trial of this matter.

23. Through each of the wrongful acts described above, Defendants, and each of them, have willfully and wantonly wronged the Plaintiffs, and each of them, or have treated them with such gross and reckless negligence, or in such a reckless disregard for their rights as is equivalent to

such a wrong, as described above, thereby entitling the Plaintiffs to punitive damages in a sum to be determined by a Jury in this cause, in an amount which is sufficient to deter these Defendants, and others similarly situated, from engaging in similar conduct in the future and to reward these Plaintiffs for bringing such conduct to light.   In the event Plaintiffs are awarded punitive damages, Plaintiffs are also entitled to recover attorneys' fees and expenses in a reasonable amount to be determined by the Court.

WHEREFORE PREMISES CONSIDERED, Plaintiffs, and each of them, demand judgment against Defendants, and each of them, jointly and severally, for actual, compensatory, statutory and punitive damages, in an amount to be determined by a Jury in this cause and/or the Court, together with pre-judgment and post-judgment interest as provided by law, attorneys' fees and costs of this action, and any and all additional relief in favor of the Plaintiffs deemed appropriate by this Honorable Court.

Respectfully submitted, this the 8th day of October, 2014.

> **SCOTT WALKER, Individually and d/b/a Maxwell & Walker Consulting Group, LLC and/or d/b/a Precision Marketing Group, LLC; STEVE SEYMOUR, Individually and d/b/a Diamond Consulting and/or d/b/a Precision Marketing Group, LLC; KIRK LADNER, Individually and d/b/a The Ladner Group and/or d/b/a Precision Marketing Group, LLC; and PRECISION MARKETING GROUP, LLC, Plaintiffs**

BY: _____

CHRISTOPHER C. VAN CLEAVE MSB # 10796

_____

CLYDE H. GUNN, III, (MSB #5074)

_____

W. CORBAN GUNN, (MSB #101752)

_____

DAVID N. HARRIS, JR. (MSB #100790)

34

Clyde H. Gunn, III, (MSB #5074)
Christopher C. Van Cleave, (MSB #10796)
W. Corban Gunn, (MSB #101752)
David N. Harris, Jr. (MSB #100790)
CORBAN, GUNN & VAN CLEAVE, PLLC
Post Office Drawer 1916
Biloxi, Mississippi 39533-1916
Telephone:  (228) 432-7826
Facsimile:  (228) 456-0998
buddy@cgvclaw.com
christopher@cgvclaw.com
corban@cgvclaw.com
david@cgvclaw.com