**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**SCOTT WALKER, et al.**                                                     **PLAINTIFFS**

**V.**                                                 **CIVIL ACTION NO. 1:14cv381-KS-JCG**

**JIMMY WILLIAMSON, et al.**                                          **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on various motions filed by Defendants, specifically, Defendant Michael A. Pohl's, Individually and d/b/a the Law Office of Michael A. Pohl, Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(6) and 9(b) ("Pohl's Motion to Dismiss") [25], Jimmy Williamson and Jimmy Williamson P.C.'s Motion to Dismiss for Failure to State a Claim [27], and Jimmy Williamson and Jimmy Williamson P.C.'s Motion to Dismiss for Lack of Personal Jurisdiction [29].  Having considering the submissions by the parties, the record, and the applicable law, the Court finds the following:

1)   Pohl's Motion to Dismiss [25] should be granted in part and denied in part;

2)   Williamson's Motion to Dismiss for Failure to State a Claim [27] should be granted in part and denied in part; and

3)   Williamson's Motion to Dismiss for Lack of Personal Jurisdiction [29] should be denied.

## I.  BACKGROUND

The current action was commenced on October 18, 2014, by Plaintiffs Scott Walker, individually and d/b/a Maxwell & Walker Consulting Group, LLC, and/or d/b/a Precision Marketing Group, LLC ("Walker"); Steve Seymour, individually and d/b/a

Diamond Consulting and/or d/b/a Precision Marketing Group, LLC ("Seymour"); Kirk D. Ladner, individually and d/b/a The Ladner Group and/or d/b/a Precision Marketing Group, LLC ("Ladner"); and Precision Marketing Group, LLC, ("Precision") (collectively "Plaintiffs") against Defendants Jimmy Williamson, individually and/or as Director and President of Jimmy Williamson, P.C. (collectively "Williamson"), Michael A. Pohl, individually and d/b/a The Law Office of Michael A. Pohl ("Pohl"), and unnamed Defendants John and Jane Does A, B, C, D, E, F, and G.  Defendants Williamson and Pohl are attorneys licensed to practice in the State of Texas.

In their Amended Complaint [19], filed on November 24, 2014, Plaintiffs allege that Pohl and Williamson joined together in a joint venture or partnership in order to represent Mississippi clients in their claims against British Petroleum ("BP") in connection with the 2010 Deepwater Horizon oil spill. (*See* Amended Complaint [19] at pp. 7-8 ¶ 27.)  Plaintiffs contend that Pohl, on behalf of the joint venture/partnership he had with Williamson, contracted with them "to provide public relations and marketing services to aid in this endeavor."  (*See id.*)

Plaintiffs allege that in April 2012, Pohl contacted Walker and told him of his partnership with Williamson and their goals.  (*See* Amended Complaint [19] at pp. 7-8 ¶ 27.)  Walker then agreed to provide public relations and marketing services for the partnership/joint venture.  (*See id.*)  Williamson met with Pohl and Walker later that month on April 23, 2012.  (*See id.* at p. 8 ¶ 28.)  In May, Walker introduced Pohl to Seymour, who also agreed to provide public relations and marketing services for the enterprise.  On May 25, 2012, in Biloxi, Mississippi, Pohl signed a contract with Walker, Seymour, and Terry Robinson (not a party to this suit) for the provision of public

relations and marketing services in "the State of Mississippi and elsewhere." (*See* Amended Complaint [19] at pp. 8-9 ¶ 30; May Operating Agreement [19-2].)  Under this contract, Plaintiffs provided services such as facilitating meetings between Defendants and potential Mississippi clients, introducing Defendants to Mississippi law firms and lawyers, and assisting in the hiring of investigatory contractors.  (*See* Amended Complaint [19] at pp. 10-12 ¶¶ 33-37.)  In exchange, Pohl agreed to pay Plaintiffs $1,500 an hour, based upon ten hour days, seven days a week.  (*See id.* at pp. 12-13 ¶ 38.)  Though the contract called for Plaintiffs to "keep accurate daily time records," Plaintiffs contend that Pohl assured them that detailed daily or hourly time records were not necessary under the contract and accepted and paid hourly invoices without such records.  (*See id.* at p. 14 ¶¶ 41-42.)  Through Plaintiffs' efforts, Pohl and Williamson gained the representation of over 1,000 Mississippi clients.  (*See id.* at ¶ 44.)

Pohl requested a deferment of paying fees owed under the May Operation Agreement [19-2], to which Plaintiffs agreed, instead accepting periodic payments. (*See id.* at p. 15 ¶ 45.)  Plaintiffs argue that these payments were bonuses or additional compensation outside the original contract, which they say Pohl ratified by accepting invoices that did not reflect credit for these payments.  (*See id.*)  Between February 2013 and August 2013, Pohl requested periodic invoices for a specific number of hours, with which Plaintiffs complied.  (*See id.* at p. 16 ¶ 46.)  Each of these invoices were paid by Pohl at the agreed rate of $1,500 per hour, and a total of $59,750 was paid under these invoices.  (*See id.*)  Plaintiffs contend that an additional $780,000 is owed under the May Operating Agreement [19-2].  (*See id.* at p. 17 ¶ 49.)  Because Robinson has

settled his claim under the May contract, Plaintiffs claim $576,200, plus reimbursement of expenses, is still owed to Walker and Seymour.  (*See id.*)

In June 2012, Walker introduced Williamson to Ladner, who was then retained by Defendants to provide public relations and marketing services, initially on a limited per service basis.  (*See id.* at p. 18 ¶ 50.)  In July 2012, after informing Walker that Defendants wanted to end their relationship with Robinson, Pohl, on behalf of the Defendants, entered into a new contract with Walker, Seymour, and Ladner.  (*See id.* at ¶¶ 50-51.)  There was no time record keeping provision in the July 15, 2012 Contract. (*See id.* at p. 19 ¶ 52; July Operating Agreement [19-4].)  The services Plaintiffs were to provide under this contract were substantially similar to the ones executed in May 2012. (*See* Amended Complaint [19] at p. 19 ¶ 53.)  An additional service provided under the July contract, though, was the distribution of leather-bound wire-ring folders to potential BP claimants, which included a cover with "Michael A. Pohl Attorney at Law" written at the top, a letter on Williamson's letterhead, a contingency fee contract, and additional information.  (*See id.* at pp. 19-20 ¶ 56; *see also* Pohl Notebook [19-5].)

Pohl agreed to pay Plaintiffs $1,500 per hour under the July contract, based upon ten hour days, seven days a week.  (*See* Amended Complaint [19] at p. 22 ¶ 62.) Plaintiffs contend that, due to their efforts under the July contract, Williamson and Pohl gained the representation of about 9,500 clients, most of whom were from Mississippi. (*See id.* at p. 26 ¶ 69.)  Plaintiffs claim that Pohl and Williamson owe them $7,875,000 under the July Operation Agreement [19-4], which they have refused to pay.  (*See id.* at p. 28 ¶ 77.)

Plaintiffs are now bringing suit for breach of contract, conscious or negligent bad faith/breach of good faith and fair dealing, quantum meruit/unjust enrichment, and fraud/fraudulent inducement/fraudulent misrepresentation.  On December 22, 2014, Defendant filed the current motions to dismiss under Federal Rule of Civil Procedure 12(b)(4) and (b)(6).

## II.  CHOICE OF LAW

A federal court sitting in diversity is bound to follow the substantive law of the forum state, including that state's conflict of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co*, 313 U.S. 487, 496, 313 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 114 A.L.R. 1487 (1938).  In Mississippi, a choice of law analysis is only appropriate where there is a true conflict between the laws of two or more states having an interest in the litigation.  *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 487 (Miss. 2006) (citing *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1038 (Miss. 1985)).  Once a true conflict is found to exist, Mississippi then employs a three-step choice of law analysis:  (1) determine whether the conflicting laws are substantive or procedural; (2) classify the area of substantive law, whether tort, property, or contract; and (3) look at the relevant section of the Restatement (Second) of Conflict of Laws.  *Id.* at 488.

Pohl and Williamson identify only two potential conflicts between Mississippi and Texas laws:  the application of the economic loss rule and the existence of a joint venture between Pohl and Williamson.  For these two issues, Pohl and Wiliamson contend that laws of Texas should apply.  Because "the law of a single state does not

necessarily control every issue in a given case," the Court examines each potential conflict to determine which state's law should apply.  *Boardman*, 470 So.2d at 1031.

### A.    Application of the Economic Loss Rule

Under Texas law, the economic loss rule refers to the common law doctrine restricting recovery of purely economic damages in actions for unintentional torts. *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 235 (Tex. 2014).  "This rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."  *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 94-95 (Tex. 1991).  Mississippi applies the economic loss rule only in the area of products liability.  *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 274 (5th Cir. 2007).  The Court must first determine if an actual conflict exists between the two states as applied to Plaintiffs' claims.  *See Zurich*, 920 So.2d at 487 (citing *Boardman*, 470 So.2d at 1038).

Pohl and Williamson both argue that, under Texas law, this rule would bar all of the Plaintiffs' extra-contractual/tort claims, namely Plaintiffs' claims of bad faith/breach of good faith and fair dealing, quantum meruit/unjust enrichment, and fraud/fraudulent inducement/fraudulent misrepresentation.  It is clear that the economic loss rule would not bar Plaintiffs' quantum meruit/unjust enrichment claim, as the claim is an alternative claim in case no valid contract is found to have existed and, if this claim were to succeed, no damages would be the result of a failure to perform contractual duties.  *See Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 762 (N.D. Tex. 2012) (allowing quantum meruit claim to go forward despite Texas economic loss rule).  Texas

law also does apply the economic loss rule to bar fraud and fraudulent inducement claims. *Id.* at 464. However, because a Texas court could potentially apply the economic loss rule to claim of bad faith/breach of good faith and fair dealing, if it found that duty of good faith arose only from the contract, there is a clear conflict of law on this issue. *See Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, No. CIV.A.3:08CV0102B, 2008 WL 3925272, at *14 (N.D. Tex. Aug. 27, 2008) ("If the defendant's duty to the plaintiff arises only from the contract between the parties, plaintiff's claim is usually a contractual claim only.")

Moving on to Mississippi's three-step conflict of law analysis, the first step is to identify whether the law is substantive or procedural. As the application of the economic loss rule to Plaintiffs' claim does not fall into the limited number of laws the Mississippi Supreme Court has found to be procedural, it is deemed to be substantive under a Mississippi conflict of law analysis. *See Zurich*, 920 So.2d at 433 ("[F]ew laws are classified as procedural . . . we have only found the definition of 'procedural' to include statute of limitations, awards of attorney's fees, and awards of prejudgment interest.").

The second step of Mississippi's conflict of law analysis calls for a determination of the area of substantive law the issue falls under. Pohl argues that Plaintiffs' claim of bad faith/breach of good faith and fair dealing sounds in contract. Plaintiffs contend that it sounds in tort. The Court need not decide between the two, as under either analysis, the laws of Mississippi should be applied. Because the only arguments made by either Pohl or Williamson are based on the premise that this claim sounds in contract, the Court addresses only an analysis under contract.

-7-

In step three of a conflict of law analysis, Mississippi looks to the Restatement (Second) of Conflict of Laws.  *Zurich*, 920 So.2d at 433-34.  The Restatement supplies both general and specific provisions, and the Mississippi Supreme Court has held that the specific provisions of the Restatement should be guiding, with the more general provisions having only secondary importance.  *Id.* at 433 (citing *Boardman*, 470 So.2d at 1032).

The contracts between Pohl and Plaintiffs are for the rendition of services; therefore, § 196 of the Restatement (Second) of Conflict of Laws applies.  This section holds:

> The validity of a contract for the rendition of services and the rights
> created thereby are determined . . . by the local law of the state where the
> contract requires that the services, or a major portion of the services, be
> rendered, unless, with respect to the particular issue, some other state
> has a more significant relationship under the principles stated in § 6 to the
> transaction and the parties, in which the event the local law of the other
> state will be applied.

Restatement (Second) of Conflict of Laws § 196 (1971).  Because the contract specifies Plaintiffs are "to provide public relations services in the State of Mississippi and elsewhere," it is clear that a major portion, if not all, of the services for which Plaintiffs were to be rendered in Mississippi.  (*See* May Operating Agreement [19-2]; July Operating Agreement [19-4].)  The Court does not find persuasive the argument that the "or elsewhere" language of the contracts means that a major portion of the services were not to be rendered in Mississippi.  The contracts were negotiated and signed in Mississippi, the represented purpose of the contracts, according to Plaintiffs' Amended Complaint [19], was to gain Mississippi clients, and the pleaded facts show that the

services were in fact, by and large, rendered in Mississippi.  Therefore, under § 196, Mississippi law should be applied.

Pohl argues that Texas has the most significant relationship with this claim under the more general § 6 of the Restatement.  Even if the Mississippi Supreme Court had not held that the more specific sections of the Restatement were to be guiding, *see Zurich*, 920 So.2d at 433 (citing *Boardman*, 470 So.2d at 1032), the Court would not find Pohl's argument to have merit.  Pohl bases his argument that Texas has the most significant relationship with Plaintiffs' claim of bad faith/breach of good faith and fair dealing on that fact that he, Pohl, is licensed to practice law in Texas and that Texas has a substantial interest in regulating the professional conduct of its licensed attorneys. While true that under Texas law, Pohl's alleged actions might be considered professional misconduct, that is not the issue in this case and has no bearing on the law which should be applied to Plaintiffs' claim.

Therefore, the Court finds that Mississippi is the appropriate choice of law with regards to the Plaintiffs' bad faith/breach of good faith and fair dealing claim.

**B.     Existence of a Joint Venture**

Williamson argues that Mississippi and Texas laws conflict on whether a joint venture exists.  In *Ingram v. Deere*, the Texas Supreme Court stated that it saw "no legal or logical reason for distinguishing a joint venture from a partnership on the question of formation of the entity.  288 S.W.3d 886, 894 n.2 (2001).  Similarly, Mississippi does not distinguish a partnership and a joint venture for formation purposes.  *Hults v. Tillman*, 480 So.2d 1134, 1142 (Miss. 1985).

-9-

Both states employ similar factor tests in determining whether a partnership has been formed.  Texas uses a five-factor test, asking whether each participant (1) shares in the profits of the business, (2) has expressed intent to be a partner, (3) has the right of control, (4) shares in the losses or liabilities, and (5) has contributed money or property to the business.  *Ingram*, 288 S.W.3d at 895.  Texas courts do not require proof of all five factors, taking instead a "less formalistic and more practical approach to recognizing the formation of a partnership."  *Id.*  Mississippi uses a comparable three-factor test that looks at (1) intent, (2) control, and (3) sharing of profits and losses. *Smith v. Redd*, 593 So.2d 989, 994 (Miss. 1991).  Though the tests are formulated differently, the Court does not find a conflict between the partnership formation laws of Texas and Mississippi.  Because there is no conflict, there is no need to do a choice of law analysis.  *Zurich*, 920 So.2d at 432.  The Court therefore applies Mississippi law.

### III.  WILLIAMSON'S MOTION TO DISMISS FOR LACK OF JURISDICTION [29]

#### A.    Standard of Review

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 68 (5th Cir. 1994).  For the purposes of a motion to dismiss for lack of personal jurisdiction, all conflicts between facts "must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.  *Id.* (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).  "In a federal diversity action such as this, the reach of federal jurisdiction over non-resident defendants is measured by a two-step inquiry."  *Smith v. DeWalt*

*Prods. Corp.*, 743 F.2d 277, 278 (5th Cir. 1984). First, the Court must determine

whether the laws of the Mississippi authorizes the assertion of personal jurisdiction

against Williamson. *Id.* If personal jurisdiction is authorized under Mississippi law, the

Court then must ensure that assertion of personal jurisdiction does not offend the Due

Process Clause of the Fourteenth Amendment. *Id.*

### B. Mississippi Long-Arm Statute

Mississippi's long-arm statute provides:

> Any nonresident person, firm, general or limited partnership, or any foreign
> or other corporation not qualified under the Constitution and laws of this
> state as to doing business herein, who shall make a contract with a
> resident of this state to be performed in whole or in part by any party in
> this state, or who shall commit a tort in whole or in part in this state against
> a resident or nonresident of this state, or who shall do business or perform
> any character of work or service in this state, shall by such act or acts be
> deemed to be doing business in Mississippi and shall thereby be
> subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-5-57. Plaintiffs contend that the Court can exercise personal

jurisdiction over Williamson under the contract and tort prongs of this long-arm statute

through his participation in a joint venture[1] with Pohl. In *Scott Co. of California v. Enco*

*Construction Co.*, the Mississippi Supreme Court held "that every member of a joint

venture is transacting business in this State when one of the joint venturers is

transacting in this State the business for which the joint venture was created." 264

So.2d 409, 410 (Miss. 1972). Therefore, since, for purposes of this motion, there is

---

[1]The Supreme Court of Mississippi has held that the only real difference between a
partnership and a joint venture is that the latter "is limited to a single transaction or a
series of similar transactions," while the former refers "to a general and continuing
business." *Scott Co. of Cal. v. Enco Constr. Co.*, 264 So.2d 409, 411 (Miss. 1972). As
such, this Court chooses to use the term "joint venture" for purposes of this motion.

neither a dispute that contracts existed between Plaintiffs and Pohl for services to be performed at least in part in Mississippi nor a dispute that the alleged tortious conduct occurred in part in Mississippi, if Plaintiffs have alleged enough facts in their Amended Complaint [19] to support their theory that a joint venture existed between Williamson and Pohl, they have established a prima facie case for personal jurisdiction under Mississippi law.

Under Mississippi law, a joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management."  *Hults v. Tillman*, 480, So.2d 1134, 1142 (Miss. 1985).  "The three main questions that are considered in [joint venture] determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing."  *Smith v. Redd*, 593 So.2d 989, 994 (Miss. 1991).

### 1.    Intent

While actual intent is necessary to find that a joint venture existed, this intent can be implied by the parties' actions.  *Hults v. Tillman*, 80 So.2d 1134, 1143 (Miss. 1985). Williamson asserts that there was never any intent to form a joint venture.  This contention is in conflict with Plaintiffs' allegations that Williamson and Pohl referred to each other as "partners" and that it was represented to them that the contracts they held were for the purpose of gaining clients for both Williamson and Pohl.  (*See* Amended Complaint [19] at p. 4 ¶ 18, pp. 32-35 ¶¶ 95-101.)  Furthermore, the informational folder distributed by Plaintiffs contained references to "The Law Office of Michael A. Pohl" and a letter from Williamson on his own letterhead, signaling that they intended to be seen as partners in the representation.  (*See id.* at pp. 19-20 ¶ 56; *see also* Pohl Notebook

[19-5].)  Conflicts of fact under a motion to dismiss for lack of personal jurisdiction are resolved in favor of the plaintiff, and the alleged facts, taken as true, show that an intention to form a joint venture could be said to have been implied by these actions. *See Johnston*, 523 F.3d at 609 (citing *Bullion*, 895 F.2d at 217).  The Court, then, finds that Plaintiffs have alleged enough facts in their Amended Complaint [19] to satisfy the intent prong of a joint venture analysis.

### 2.    Profit Sharing

Profit sharing is the most important factor in determining whether a joint venture exists.  *Century 21 Deep South Props., Ltd. v. Keys*, 652 So.2d 707, 715 (Miss. 1995). Plaintiffs have alleged that Williamson and Pohl, through their joint venture, agreed to share legal fees earned through representation of BP oil spill claimants.  (*See* Amended Complaint [19] at pp. 5-6 ¶ 21, pp. 10-11 ¶¶ 34-35.)  Williamson appears to concede as much in his Motion to Dismiss for Failure to State a Claim, referenced specifically in his arguments against the Court's assertion of personal jurisdiction.  (*See* Memo. in Support for Motion to Dismiss for Failure to State a Claim [31] at pp. 16-18; Memo. in Support Motion to Dismiss for Lack of Personal Jurisdiction [30] at p. 3.)  In *Braddock Law Firm, PLLC v. Becnel*, the Mississippi Court of Appeals held a similar fee splitting arrangement among attorneys to qualify as "sharing profits" for the purposes of determining whether a joint venture existed.  949 So.2d 38, 51 (Miss. Ct. App. 2006). The state court in that case held that this type of profit-sharing arrangement alone could provide sufficient evidence to support a finding of a joint venture.  *See id.*  Plaintiffs, then, have provided enough factual allegations to pass this prong of the analysis.

### 3.     Control

"Lack of control is not enough by itself enough to disprove [a joint venture]."

*Century 21*, 652 So.2d at 715.   "Partner-like control" may not be exerted by every party

of a joint venture because circumstances will vary with the relationship between the

parties.   *Smith*, 593 So.2d at 994.   Plaintiffs allege that Pohl acted in certain

circumstances at Williamson's directions in his dealings with them.   (*See* Amended

Complaint [19] at p. 5 ¶ 20, p. 7 ¶ 24-26, p. 34 ¶ 105.)   Even if these allegations are

somewhat weak and conclusory statements going towards Williamson's control over

Pohl's actions, because the other two factors are supported by adequate factual

assertions, the Court finds that Plaintiffs have sufficiently pleaded enough facts in their

Amended Complaint [19] to support that a joint venture existed.

As such, since all members of a joint venture are said to be parties of a

transaction in Mississippi when that transaction is in furtherance of the joint venture,

Plaintiffs have sufficiently met their burden to show a prima facie case for the Court's

assertion of personal jurisdiction over Williamson under Mississippi law.

### C.     Fourteenth Amendment Due Process Clause

In order for a federal court to exercise personal jurisdiction over a nonresident in

compliance with the Due Process Clause of the Fourteenth Amendment, it must find

that 1) "the defendant purposefully established 'minimum contacts' with the forum state"

and 2) "entertainment of the suit against the nonresident would not offend 'traditional

notions of fair play and substantial justice.'"   *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th

Cir. 1990) (citing *Asahi Metal Indus. Co. v. Superior Court*, 280 U.S. 102, 105, 107 S.

Ct. 1026, 1029, 94 L. Ed. 2d 92(1987)).  Plaintiffs' theory of personal jurisdiction is

Williamson's participation in the alleged joint venture with Pohl.  Williamson argues that

Pohl's contacts with Mississippi, which the Court assumes are sufficient under the

"minimum contacts" test absent argument to the contrary, cannot be imputed to

Williamson by virtue of the alleged joint venture because a joint venture did not exist

between Williamson and Pohl.  Williamson further contends that assertion of personal

jurisdiction over him would offend "traditional notions of fair play and substantial justice."

### 1.    Minimum Contacts

Multiple district courts have found that the contacts of one co-venturer can be

imputed to another in the exercise of personal jurisdiction over a non-resident when that

co-venturer is acting in furtherance of the joint venture.  *See Hanback v. GGNSC*

*Southaven, LLC*, No. 3:13-CV-00288-MPM-SAA, 2014 WL 3530613, at *3 (N.D. Miss.

2014); *Nolan v. Boeing Co.*, 736 F.Supp. 120, 127 (E.D. La. 1990); *Itel Containers Int'l*

*Corp. v. Atlanttrafik Express Serv., Ltd.*, 116 F.R.D. 477, 479-80 (S.D.N.Y. 1987);

*Aigner v. Bell Helicopters, Inc.*, 86 F.R.D. 532, 540-41 (N.D. Ill. 1980).  As detailed

above, Plaintiffs have pleaded sufficient facts in their Amended Complaint [19] to

support a finding of a joint venture.  *See supra* III.B.  Williamson has put forth no

argument that the contacts of Pohl, his alleged co-venturer, are not sufficient to satisfy

the "minimum contacts" necessary for personal jurisdiction under a due process

analysis.  Furthermore, such an argument would surely fail, as Plaintiffs have shown

that Pohl negotiated and signed contracts with them in Mississippi, for services to be

performed in large part in Mississippi, and that such contracts form the basis for the

action before the Court. (*See* May Operating Agreement [19-2]; July Operating Agreement [19-4].) If these contracts were in furtherance of the joint venture, as Plaintiffs sufficiently plead and as Williamson does not contest other than to protest the existence of such an enterprise, the contacts Pohl had with Mississippi pursuant to these contracts can be imputed to Williamson. As such, Williamson has had the minimum contacts with Mississippi necessary under the Due Process Clause of the Fourteenth Amendment for this Court to exercise personal jurisdiction over him.

### 2. Fair Play and Substantial Justice

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). To show that an exercise of jurisdiction would be unfair under due process, "the defendant must make a 'compelling case' against it." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Williamson has put forth no argument that exercising personal jurisdiction would be unfair or unreasonable so as to offend "traditional notions of fair play and substantial justice," other than the mere conclusion that it would do so, and instead chooses to argue only that he has not had sufficient minimum contacts with Mississippi. Since the Court finds that Pohl's contacts can be imputed to Williamson through the alleged joint venture, Williamson's Motion to Dismiss for Lack of Personal Jurisdiction [29] must be denied.

### III. MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM [25] [27]

### A. Standard of Review

-16-

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).  A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient.  *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). However, "detailed factual allegations" are not required.  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).  Although courts are to accept all well-pleaded facts as true and view those facts in the light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation."  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted).  "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate."  *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

### B.    Pohl's Motion to Dismiss for Failure to State a Claim [25]

-17-

### 1.    Contractual Liability Claim

Pohl argues that, because Plaintiffs admit to not fulfilling their contractual duty to keep accurate daily time records, they cannot recover for any alleged breach of contract of Pohl.  This would be an affirmative defense to Plaintiffs' breach of contract claim, which could make dismissal appropriate.  *See Miller*, 726 F.3d at 726 (5th Cir. 2013) (citing *Kansa Reins.*, 20 F.3d at 1366 (5th Cir. 1994)).  Plaintiffs' purported admission reads:

> . . . Although the May 25, 2012 "Public Relations Consulting Agreement" states "All consultants shall keep accurate daily time records of all efforts expended on behalf of [Defendants]", Pohl, on behalf of all Defendants, acknowledged and ratified that Plaintiffs were not required by Defendants and/or the subject Contracts to keep detailed daily and/or hourly time records.  At all times, Plaintiffs kept and provided all time records Pohl, on behalf of all Defendants, required and/or deemed necessary under the terms of the May 25, 2012 Contracts.
>
> 42.  Alternatively, Pohl's actions, on behalf of all Defendants, in accepting and paying hourly invoices without detailed daily and/or hourly time records constitutes a waiver of the "accurate daily time records" of the May 25, 2012 Contracts and any implied duty to maintain same, if any.

(See Amended Complaint [19] at p. 14 ¶¶ 41-42) (alternation in original).  Plaintiffs have clearly alleged the fact that Pohl represented to them that they did not need to keep detailed daily time records to fulfill their contractual obligation.  The alleged fact that Pohl accepted and paid hourly invoices without detailed records only serves to make this claim more "plausible on its face."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)  Though Pohl argues correctly that Plaintiffs have not stated when or how this representation took place**,** such details are unnecessary.  *See Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955) ("[T]he

-18-

pleading standard Rule 8 announces does not require 'detailed factual

allegations' . . . ").  Under a Rule 12(b)(6) analysis, the Court "accept[s] all well-pleaded

facts as true and view[s] those facts in the light most favorable to the plaintiffs."  *Dorsey*

*v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Stokes v. Gann*,

498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

Because Plaintiffs have pleaded enough facts, which the Court accepts as true,

to show that they were not in breach of the contracts, the Court finds that Pohl's Motion

to Dismiss [25] with respect to the Plaintiffs' breach of contract claim should be denied.

### 2.    Tort Claims

Pohl argues that the economic loss rule should be applied to these claims even

under Mississippi law.  Because Mississippi courts do not apply this rule in anything but

products liability cases and the Mississippi Supreme Court has given no clear indication

of adopting it in other cases, this Court must decline to apply the rule as well.  *See*

*Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 274 (5th Cir. 2007).

Pohl contends that each of the tort/extra-contractual claims in Counts II through

Count IV of Plaintiffs' Amended Complaint [19] should be dismissed because they are

not "independent torts," arguing that Plaintiffs, as a result, are limited only to contractual

remedy.  Pohl goes on to make further arguments against each extra-contractual claim

against him.  The Court addresses each of these claims in turn.

### a.    Bad Faith/Breach of Duty of Good Faith and Fair Dealing

Under Mississippi law, there can be no breach of good faith and fair dealing

unless there is also a breach of contract.  *Frye v. S. Farm Bureau Cas. Ins. Co.*, 915

So.2d 486 (Miss. Ct. App. 2005). Logically, then, a claim of breach of good faith and fair dealing could never be an "independent tort" as Pohl argues is necessary. "A breach of the duty of good faith provides the injured party with a cause of action in addition to his claim for breach of contract." *In re Evans*, No. 09-03763-NPO, 2012 WL 2374237, at *17 (Bankr. S.D. Miss. June 22, 2012). The law does not, then, limit recovery to contractual remedy as Pohl contends.

Pohl additionally argues Plaintiffs have not pleaded sufficient facts to support an allegation of bad faith or breach of duty of good faith and fair dealing. The Mississippi Supreme Court has held that a "breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992) (citing Restatement (Second) of Contracts § 205, 100 (1979)). Bad faith is more than "bad judgment or negligence," but instead "implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Univ. of S. Miss. v. Williams*, 891 So.2d 160, 170-71 (2004) (quoting *Bailey v. Bailey*, 724 So.2d 335, 338 (Miss. 1998)) (internal quotations omitted). Bad faith "contemplates a state of mind affirmatively operating with furtive design or ill will." *Southland Enters., Inc. v. Newton Cnty.*, 940 So.2d 937, 943 (Miss. Ct. App. 2006) (citing *Bailey*, 724 So.2d at 338).

Pohl's contention throughout his motion appears to be that any breach on his part was a result of or is excused by Plaintiffs' initial breach in not providing detailed time records. Pohl offers no alternative theory to excuse the non-payment of the monies Plaintiffs allege are owed under the contracts. Because the Court accepts the nonmovant's allegations as true for an analysis under 12(b)(6) as stated above, the

-20-

Court accepts as true Plaintiffs' allegation that Pohl excused them from any requirement of detailed time records.  For Pohl to then deny payment based on inadequate time records could imply a consciously dishonest purpose that is characteristic of bad faith.

Therefore, Pohl's Motion to Dismiss [25] with regards to Plaintiffs' claims of conscious bad faith/breach of good faith and fair dealing is denied.

However, because bad faith is more than negligence or recklessness and requires consciousness of action, Pohl's Motion to Dismiss [25] Plaintiffs' claims of gross negligence or reckless disregard in breaching the implied covenant of good faith and fair dealing is granted.

### b.    Quantum Meruit/Unjust Enrichment

Pohl argues that because both sides agree that there was an enforceable contract, Plaintiffs can bring no claim for quantum meruit. Quantum meruit is a contractual remedy "premised either on express or implied contract."  *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So.2d 495, 514 (Miss. 2007).  The doctrine is applicable where services performed were "not anticipated by the contract, and also that there were no provisions of the contract by which payment could be made for unanticipated labor."  *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954 (Miss. 1999) (quoting *Citizens Nat. Bank v. L. L. Glascock, Inc.*, 243 So.2d 67, 70 (1971)).

While Pohl seems willing to admit that there were enforceable contracts between him and the Plaintiffs, his motion expresses no such willingness to admit all the services Plaintiffs contend were performed under the contract were indeed done so.  In fact, Pohl

-21-

argues that certain actions taken by Plaintiffs were done outside the contracts.  (*See* Pohl's Memo. in Support of Reply to Response [48] at pp. 8-9.)

The only distinction between quantum meruit and unjust enrichment is the measure of recovery.  *Estate of Johnson v. Adkins*, 513 So.2d 922, 926 (1987).  Recovery under a  quantum meruit theory "is measured by the reasonable value of materials or services rendered."  *Id.*  Under unjust enrichment, the plaintiff receives "that to which [he] is equitably entitled."  *Id.*

As Federal Rule of Civil Procedure 8(d)(2) allows Plaintiffs to set forth multiple theories of a claim, Plaintiffs are allowed to plead both breach of contract and quantum meruit and unjust enrichment.  Pohl's Motion to Dismiss [25] will be denied in regards to Plaintiffs' quantum meruit/unjust enrichment claim.

### c.    Fraud

Plaintiffs contend that Pohl and Williamson both made statements about how profitable the contracts would be for the Plaintiffs, with intention of inducing them into contracting to perform services for them and with no intention of ever paying the fees owed under the contracts.  Under Mississippi law, "[i]t is settled rule that a contractual promise, made with the undisclosed intention of not performing it, is fraud."  *First Money, Inc. v. Frisby*, 369 So.2d 746, 750 (Miss. 1979) (quoting *Miss. Power Co. v. Bennett*, 173 Miss. 109, 128-29, 161 So. 301, 306 (Miss. 1935)).  However, "the mere fact that a promise was broken is not in itself sufficient proof that the promisor so intended at the time made . . . ."  *Salitan v. Horn*, 212 Miss. 794, 801, 55 So.2d 444, 446 (Miss. 1951).  Though Federal Rule of Civil Procedure 9(b) allows for intent to be

pleaded "generally," it still must be pleaded with enough specificity to meet the requirements of Rule 8. *Iqbal*, 556 U.S. at 686-87, 129 S. Ct. at 1954 (2009). Plaintiffs have pleaded no facts to support their allegations that Pohl intended to not perform under the contracts, other than the fact that Pohl did, in fact, not perform. This fact is insufficient under Mississippi law to support Plaintiffs' claim.

Therefore, Pohl's Motion to Dismiss [25] is granted with respect to Plaintiffs' claim of fraud/fraudulent inducement/fraudulent misrepresentation.

### 3.   Illegality of Conduct

Pohl argues that actions taken by Plaintiffs, such as distribution of informational folders containing contingency fee contracts for prospective BP claimants, amounted to improper solicitation of clients done outside of the contractual terms and that Plaintiffs cannot recover due to the illegality of their conduct. Plaintiffs, however, contend that the folders were distributed under the terms of the contracts at Williamson's direction, contained information confirming the joint venture/partnership between Pohl and Williamson, and contained a letter, referencing the contingency fee contract, signed by Williamson, Pohl's alleged partner in the joint venture.

In analyzing a motion to dismiss under Rule 12(b)(6), the Court is instructed to "construe[] the complaint liberally in favor of the plaintiff, and take[] all facts pleaded in the complaint as true." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). In doing so, the Court accepts as true, for the sake of this motion, that Pohl, through his joint venture with Williamson, authorized the actions he calls illegal as being within the terms of the contract.

-23-

At best, Pohl's argument is an affirmative defense to the breach of contract claim against him.  However, Pohl does not demonstrate what about Plaintiffs actions made them illegal other than summarily calling them improper solicitation.  Because the illegality of Plaintiffs' contractual obligations are not apparent "on the face of the pleadings," it would be improper to dismiss Plaintiffs' complaint on these grounds.  *See Miller*, 726 F.3d at 726 (5th Cir. 2013) (quoting *Kansa Reins. Co.*, 20 F.3d at 1366 (5th Cir. 1994)).

### C.    Williamson's Motion to Dismiss for Failure to State a Claim [27]

Williamson's Motion to Dismiss for Failure to State a Claim [27] is premised on the argument that Plaintiffs have not pleaded enough factual allegations for a finding of a joint venture/partnership.  Williamson first points out that partnership is not a claim on which relief can be granted.  However, it is clear from the Amended Complaint [19] that, although labeled "Count I," Plaintiffs intended their allegations of a partnership or joint venture between Williamson and Pohl to be their theory of Williamson's liability. Williamson himself acknowledges that the incorrect heading does not obscure Plaintiffs' purpose.  This technical mistake is not enough to base a dismissal of any allegation of a joint venture between Williamson and Pohl when there is no confusion on the meaning. *See Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993) (holding that the technical mistake under Federal Rule of Civil Procedure 8(c) of mislabeling the affirmative defense of waiver as "estoppel" did not prejudice the plaintiff when there was no "unfair surprise").

Because the Court has already determined that Plaintiffs have pleaded the necessary factual allegations to allow a finding of a joint venture on the pleadings,

Williamson's arguments that they have not fail.  *See supra*, Part III.B.  Therefore, all that is left is to evaluate the liability of Williamson has Pohl's co-venturer.

"A joint venture is a single purpose partnership."  *Barrett v. Jones, Funderburg, Sessums, Peterson & Lee, LLC*, 27 So.3d 363, 372 (Miss. 2009) (citing *Duggins v. Guardianship of Wash.*, 632 So.2d 420, 427 (Miss. 1993).  As such, Mississippi partnership law applies.  *Id.*  Under Mississippi partnership law, "all partners are liable jointly and severally for all obligations of the partnership . . . ."  Miss. Code. Ann. § 79-13-306.  If an act is committed while a partner "is engaged in the partnership business, and is in furtherance of the interest of the partnership, then the partnership and all partners are liable."  *Barrett*, 27 So.3d at 374 (quoting *Idom v. Weeks & Russell*, 135 Miss. 65, 76-77, 99 So. 761, 763 (Miss. 1924)).  Williamson makes no argument that the contracts, and breach thereof, were not made in furtherance of the alleged joint venture.  His only argument is that the joint venture did not exist.  As the Court has found sufficient pleading to the contrary to survive a 12(b)(6) motion, Williamson's motion must be denied as to this point.

However, since Plaintiffs cannot bring action for negligent or reckless breach of good faith and fair dealing against Pohl or the joint venture, *see supra* Part IV.B.2.a, Williamson's Motion to Dismiss for Failure to State a Claim [27] is granted with respect to that claim against him.

Similarly, because Plaintiffs have failed to adequately plead a fraud claim against Pohl or the joint venture, *see supra* Part IV.B.2.c, Williamson's Motion to Dismiss for Failure to State a Claim [27] is granted with respect to the fraud claim against him.

## V.  CONCLUSION

-25-

IT IS THEREFORE ORDERED AND ADJUDGED that Williamson's Motion to Dismiss for Lack of Personal Jurisdiction [29] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Pohl's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(6) and Rule 9(b) [25] is granted in part and denied in part.  It is granted with respect to Plaintiffs' claim of negligent or reckless bad faith/breach of good faith and fair dealing and their claim of fraud/fraudulent inducement/fraudulent misrepresentation.  It is denied with respect to the following claims, which are still pending:  breach of contract, conscious bad faith/breach of good faith and fair dealing, and quantum meruit/unjust enrichment.

IT IS FURTHER ORDERED AND ADJUDGED that Williamson's Motion to Dismiss for Failure to State a Claim [27] is granted in part and denied in part.  It is granted with respect to Plaintiffs' claim of negligent or reckless bad faith/breach of good faith and fair dealing and their claim of fraud/fraudulent inducement/fraudulent misrepresentation.  It is denied with respect to the following claims, which are still pending:  breach of contract, conscious bad faith/breach of good faith and fair dealing, and quantum meruit/unjust enrichment.

SO ORDERED AND ADJUDGED this the 18th day of September, 2015.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE