**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**SCOTT WALKER, Individually and/or  d/b/a**
**Maxwell & Walker Consulting Group, LLC**
 **and/or d/b/a  Precision Marketing Group, LLC;**
**STEVE SEYMOUR, a/k/a Stephen Seymour,**
**Individually and/or d/b/a Diamond Consulting**
**and/or d/b/a Precision Marketing Group, LLC;**
**KIRK D. LADNER, Individually and d/b/a The Ladner Group**
**and/or d/b/a Precision Marketing Group, LLC;**
**and Precision Marketing Group, LLC**                             **PLAINTIFFS**

**VERSUS**                                        **CAUSE NO: 1:14-cv-381-KS-JCG**

**JIMMY WILLIAMSON, Individually and/or**
**as the owner/member/officer of Jimmy Williamson, P.C.,**
**and/or as a partner/member of the law firm Williamson & Rusnak;**
**JIMMY WILLIAMSON, P.C., Individually and/or**
**as a partner/member of the law firm Williamson & Rusnak;**
 **MICHAEL A. POHL, Individually and/or**
**d/b/a The Law Office of Michael A. Pohl;**
**CYNDI RUSNAK, Individually and/or**
**as the  owner/member/officer of  Cyndi Rusnak, PLLC,**
**and/or as a partner/member of the law firm Williamson & Rusnak;**
**CYNDI RUSNAK, PLLC, Individually and/or**
**and/or as a partner/member of the law firm Williamson & Rusnak;**
**ROBERT E. AMMONS, Individually and/or**
**as the owner/member/officer of The Ammons Law Firm, LLP; and**
**THE AMMONS LAW FIRM, LLP**                          **DEFENDANTS**

**MEMORANDUM IN OPPOSITION TO ROBERT AMMONS' AND THE AMMONS**
**LAW FIRM, LLP'S MOTION TO DISMISS PRECISION MARKETING GROUP, LLC'S**
**AMENDED COMPLAINT**
**FOR LACK OF PERSONAL JURISDICTION**

COME NOW, PLAINTIFFS, Walker, Ladner, and Precision Marketing Group and file

this Joint Memorandum in Response to Robert Ammons and the Ammons Law Firm, LLP's

Motion to Dismiss for Lack of Personal Jurisdiction, and in support thereof show as follows:

## I.   INTRODUCTION

This Court's exercise of personal jurisdiction over the Ammons Defendants is proper. Pohl and the Ammons Defendants entered into a joint venture for the purpose of obtaining and representing car accident victims in Mississippi and elsewhere.   On behalf of the joint venture, Pohl contracted with the Plaintiffs to provide marketing services to find car accident clients, in exchange for a portion of the attorney's fees resulting from the Pohl/Ammons joint venture. Pohl, on behalf of the Pohl/Ammons joint venture and in breach of the contract with the Plaintiffs, refused to pay the Plaintiffs the agreed percentage of attorney's fees due and owing to them. Plaintiffs subsequently filed suit.

Precision's First Amended Complaint lists substantial contacts that the Pohl/Ammons joint venture had with Mississippi.  On behalf of the Pohl/Ammons joint venture, Pohl funded, managed, operated and/or controlled three Mississippi limited liability companies, and used them to promote the operations of the Pohl/Ammons joint venture.  These three Mississippi companies, the offices of which were located in Mississippi, served as the base for the marketing operations of the Pohl/Ammons joint venture.  While the Pohl/Ammons joint venture did not restrict its marketing activities to Mississippi, the Pohl/Ammons joint venture contracted with the Plaintiffs, Mississippi residents, to provide the marketing activities; the Plaintiffs' management of the marketing activities took place in Mississippi; Pohl/Ammons paid their contract workers through the Mississippi companies;  the Pohl/Ammons joint venture passed all of the marketing funding (including loans to potential clients) through the three Mississippi companies; and the marketing activities included some potential Mississippi clients.  In short, although the Pohl/Ammons marketing organization solicited clients nationwide, the state with the highest nexus to the activities of the Pohl/Ammons marketing activities is Mississippi.

Ammons incorrectly argues that, since he did not personally come to Mississippi, he had no contacts.  Ammons overlooks that personal jurisdiction may be imputed to a co-venturer.  The actions of co-venturers are binding on each member of the joint venture. The Plaintiffs pled enough facts to establish Pohl's minimum contacts with Mississippi and this Court has already ruled that Pohl had sufficient minimum contacts in Mississippi for this Court to exercise personal jurisdiction over him.[1] Therefore, if the Plaintiffs have alleged sufficient facts to establish the existence of the joint venture between Pohl and Ammons, personal jurisdiction may be imputed to Ammons as a co-venturer.

The Plaintiffs have pled sufficient facts to establish the existence of a joint venture between Pohl and Ammons. In support of their theory of joint venture, the Plaintiffs pled:

Pohl had also an ongoing, separate joint venture with Robert E. Ammons, a Houston, Texas attorney, who practiced law in Texas through his law firm, The Ammons Law Firm, LLP. The purpose of the Pohl/Ammons joint venture was to represent clients with personal injury claims arising out of motor vehicle accidents. Pohl, Robert Ammons and/or The Ammons Law Firm, LLP had an agreement under which Pohl would find and obtain clients for the joint venture, and Ammons and/or The Ammons Law Firm would prosecute the claims. Pohl, Ammons and/or The Ammons Law Firm would share the resulting attorney fees.

When Pohl discovered the nature of Dane Maxwell's trucking businesses, Pohl retained Dane Maxwell to do separate contract work for the Pohl/Ammons joint venture. On behalf of the Pohl/Ammons joint venture, Pohl retained Dane Maxwell to find, solicit and sign up potential clients who had been involved in accidents with trucking companies. Maxwell's work for Pohl/Ammons joint venture eventually expanded to include soliciting and signing up clients with personal injury claims arising out different types of motor vehicle accident cases. On behalf of the Pohl/Ammons joint venture, Pohl agreed to pay Dane Maxwell a flat fee for each motor vehicle accident client which Maxwell signed up for the Pohl/Ammons joint venture. On behalf of the Pohl/Ammons joint venture, Pohl also agreed to pay all of the expenses of Dane Maxwell in furtherance of these activities.
36. On behalf of the Pohl/Ammons joint venture, and also on behalf of the Williamson/Pohl joint venture, Pohl instructed Dane Maxwell to submit his fees and expenses (including a claim for "bonuses" which Pohl paid Dane Maxwell from time to time) to Pohl through a "pass-through" arrangement which Pohl set up with Maxwell Walker. In accordance with the "pass-through" arrangement, Maxwell Walker created invoices for the amounts which Dane

---

[1] See Operating Agreement, Exhibit A to [Docs. 166; 179]; [Memorandum and Opinion Order, Doc. 103, pg 15-16]

Maxwell provided. Maxwell Walker then sent the invoices to Pohl. Pohl would pay that amount of money to Maxwell Walker. Maxwell Walker then paid the money Pohl sent to Dane Maxwell.

On behalf of the Williamson/Pohl joint venture, and on behalf of the Pohl/Ammons joint venture, Pohl agreed to pay Maxwell Walker a "pass-through" fee" of 3% of all payments and funds which Maxwell Walker administered through its accounts for Pohl in this manner. Pohl did not explain to Walker or Maxwell Walker why he paid any of the funds to Dane Maxwell, and/or any of the others which Pohl later paid through the same arrangement. Neither Walker nor Maxwell Walker had discretion as to the amount or timing of payments, but followed Pohl's directions. When Walker or any of the other Plaintiffs questioned why Pohl was paying Dane Maxwell so much money, Pohl said that he had a special arrangement with Dane Maxwell that was none of their concern.

Pohl ultimately "passed through" to Dane Maxwell approximately $3.6 million through his arrangement with Maxwell Walker (and later, Precision Marketing Group, LLC.). Part of that $3.6 million was in furtherance of the Williamson/Pohl joint venture, since it pertained to Dane Maxwell's marketing efforts to potential BP/Deepwater Horizon claimants. Part of the $3.6 million paid to Dane Maxwell in the pass-through arrangement pertained to Dane Maxwell's marketing efforts for the Pohl/Ammons joint venture

Williamson/Pohl directed Walker/Seymour/Ladner to set up a limited liability company in their own names in order to manage Williamson/Pohl's contract workers. Pursuant to Williamson/Pohl's instructions, Walker and Ladner formed Precision Marketing Group, LLC in January 2013. On behalf of the Williamson/Pohl joint venture, Pohl leased space for the new company in the Hancock Bank building in Gulfport, Mississippi, and paid to set up an office with equipment and staff.

The Pohl/Ammons's "pass-through" arrangement for paying the Dane Maxwell and other contract workers also moved to PMG.

**From its inception in January 2013 through October 2014, PMG provided services to the Williamson/Pohl joint venture and the Pohl/Ammons joint venture. From its inception in January 2013 until October 2014, Pohl, on behalf of Williamson/Pohl joint venture and the Pohl/Ammons joint venture, entirely funded all of the operations of PMG and controlled all aspects of PMG, including, but not limited to, leasing the office space, making staff hiring decisions; dictating the invoicing and payment structure; dictating and controlling the marketing activities; and requiring that all business decisions be approved by Pohl.**

**On behalf of the Pohl/Ammons joint venture, Pohl was still operating his personal injury marketing organization. Pohl had separately instructed Ladner/Walker/Seymour not to shut down the PMG office entirely, but to keep it open with one staff person, and to retain certain of the workers. On behalf of the Pohl/Ammons joint venture, Pohl continued to pay the expenses of PMG, and to operate his marketing activities for personal injury claims through PMG.**

In early 2013, Pohl and Dane Maxwell had terminated their special arrangement. Subsequently, Pohl had a meeting with Ladner/Walker/Seymour. Pohl informed them that his "main business" was representing rollover clients. Pohl asked them to start marketing to "rollover" accident claimants on behalf of the Pohl/Ammons joint venture. On behalf of the Pohl/Ammons joint venture, Pohl agreed to pay Walker/Seymour/Ladner, collectively, up to thirty percent of the attorney fees Pohl received from the cases, plus expenses. Pohl instructed them to submit their expenses for this work through PMG alongside the BP/Deepwater Horizon Settlement marketing expenses. From early 2013 through October 2014, Ladner/Seymour/Walker conducted marketing efforts to obtain personal injury clients for the Pohl/Ammons joint venture.

**Ladner/Seymour/Walker also provided management services for the Pohl/Ammons joint venture's contract workers and administered payment of the contract workers' fees and expenses through PMG.** On behalf of the Pohl/Ammons joint venture, Pohl agreed to pay PMG a 3% "pass-through" fee on all amounts which Pohl paid through PMG for fees and expenses of the Pohl/Ammons joint venture's marketing efforts.

In early 2014, Ladner/Walker/Seymour threatened to stop their marketing activities for the Pohl/Ammons joint venture since Pohl had failed to pay the agreed fees on the BP/Deepwater Horizon Settlement claims. To assuage their objections and keep his marketing efforts going, Pohl paid them $50,000 on March 9, 2014. Pohl directed Ladner/Walker/Seymour to send him two receipts --- one for the March 9, 2014 and one for Pohl's prior September 9, 2013 payment of $50,000. Pohl instructed Walker that the receipts should state that they were payments on the first of the eighteen invoices Ladner/Walker/Seymour had submitted to him on January 22, 2014. Walker complied with Pohl's demand and sent Pohl the requested invoices, backdating the one for the prior September 2013 payment

On June 21, 2014, Pohl made a third payment to Walker/Seymour/Ladner in the amount of $50,000. As an inducement to keep Walker/Seymour/Ladner working on marketing for the Pohl/Ammons joint venture, Pohl promised, on behalf of the Williamson/Pohl joint venture, that more payments were forthcoming on the Williamson/Pohl joint venture claims.

In Spring of 2014, on behalf of the Pohl/Ammons joint venture, Pohl reached an agreement with Walker/Seymour/Ladner for them to provide marketing services to the joint venture to potential personal injury clients with claims arising from ignition failures in General Motors cars.

On behalf of the Pohl/Ammons joint venture, Pohl agreed to pay Walker/Seymour/Ladner, collectively, thirty percent of the attorney fees Pohl received from the Pohl/Ammons joint venture on GM ignition failure cases which resulted from their marketing efforts.

Ladner/Seymour/Walker also provided management services for the Pohl/Ammons joint venture's contract workers and administered payment of the contract workers' fees and expenses through PMG.

Once again, Pohl informed Walker/Seymour/Ladner that Pohl needed a document to protect himself in case the Bar learned that he was splitting fees with non-lawyers. Pohl drafted an "Operating Agreement" in which Pohl purportedly agreed to pay the GM Settlement

Verification Team, LLC an unspecified hourly rate "not to exceed thirty percent" of Pohl's attorney fees. Pohl assured Walker/Seymour/Ladner that the prohibition on splitting fees only applied to him, as an attorney, and that everything he was suggesting was legal and proper. Pohl told Walker/Seymour that he had had Mississippi attorneys review and approve this process.

**Walker, Ladner and Pohl signed the Operating Agreement on July 1, 2014**. Exhibit A.

From Spring 2014 through October 2014, Ladner/Seymour/Walker conducted marketing efforts to obtain "GM ignition failure" clients for the Pohl/Ammons joint venture. Walker/Seymour/Ladner provided marketing services to the Pohl/Ammons joint venture and succeeded in obtaining new clients for the joint venture.

**On behalf of the Pohl/Ammons joint venture, Pohl instructed Walker and Ladner to form two limited liability companies in Mississippi under their own names. One was Helping Hands Group, LLC and the other was GM Settlement Verification Team, LLC. Pohl conducted various "pass-through" activities under the auspices of those two companies. Pohl funded, managed, controlled and operated the business of those two companies. Pohl instructed Walker and Ladner how to set up the companies and how the businesses would work. Pohl instructed them to set up a website and print brochures, and provided them with the content. Pohl provided all of the financing for the companies. Pohl used the two companies to "pass-through" payments to various persons and entities.**

Through September 2014, Walker/Seymour/Ladner procured through their marketing services approximately sixty car accident (including, but not limited to, rollover and GM ignition failure) cases for the Pohl/Ammons joint venture. Almost immediately, Pohl and Ammons began receiving attorney fees from those cases. However, Pohl did not pay any of the agreed share of his fees to Walker/Seymour/Ladner.

Shortly thereafter, the Plaintiffs filed this lawsuit.

The Defendants have received millions of dollars of attorney fees as a result of the Plaintiffs' services.

As described in the factual assertions above, Michael Pohl, Robert Ammons and The Ammons Law Firm, LLP intended to and did form, and at all material times were acting as, a Joint Venture with regard to the business of representing personal injury clients and resolving their claims (for profit). The primary expressed purpose of that Joint Venture was to represent obtain and represent clients with personal injury claims for the goal of sharing resulting attorney fees.

As set forth with particularity above, Defendants each: expressed their intent to be for the joint venture; had the right to participate and did participate in the business of the partnership; had an agreement to contribute and did contribute money, property and/or services to the joint venture; had the right to share and did share in the profits of the business of the joint venture; and agreed to share in any losses or liabilities of the business of the joint venture.

Also pursuant to statutory and common law, Pohl, Ammons and The Ammons Law Firm, LLP are each individually, and jointly and severally, liable for any and all injuries and damages of the Plaintiffs described in this Complaint.

Additionally, and in the alternative, as set forth with particularity above, Ammons and The Ammons Law Firm, LLP exercised sufficient dominion and/or control over Michael Pohl and/or participated directly with Pohl such that Pohl was said Defendants' agent and/or was a co-principal with said Defendants, such that Defendants, and each of them, are individually and jointly and severally liable for any and all damages and injuries of the Plaintiffs described herein. [2]

As discussed below, Precision has pled enough facts showing the existence of a joint venture and Ammon's status as a co-venturer. Accordingly, this Court's exercise of personal jurisdiction over the Ammons Defendants is proper and this Court should deny their motion to dismiss.

## II.   ARGUMENT AND AUTHORITIES

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a *prima facie* case if the district court rules without an evidentiary hearing." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 68 (5th Cir. 1994).[3] "Proof by a preponderance of the evidence is not required. Moreover, on a motion to dismiss for lack of jurisdiction, **uncontroverted allegations in the plaintiff's complaint must be taken as true**, and conflicts between the facts contained in the parties' affidavits must be **resolved in the plaintiff's favor** for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213,

---

[2] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 34-38; 94; 96-97; 117-120, 123; 129-138; 153-156 and Precision's Amended Complaint (Doc. 179) at ¶ 34-38; 96; 117-120, 123; 136-144; 153-156.

[3] [Memorandum and Opinion Order, Doc. 103, pg 10]

217 (5th Cir. 1990)(emphasis added).[4] It is reversible error to resolve contested factual allegations in favor of the defendant. *Id*.

Defendants Ammons and Ammons Law Firm assert that the law requires a plaintiff to rebut evidence in the form of documentary evidence and affidavit testimony which calls into question the basis of alleged jurisdiction.[5] This is a misrepresentation of the law; as cited above, conflicts between the facts asserted by the parties *must* be resolved in favor of the plaintiff. Defendants Ammons and Ammons Law Firm filed an affidavit of Robert Ammons stating that many of the facts contained in the Plaintiffs' complaints are not true.  This Court must take the Plaintiffs' allegations as true and resolve the contested facts in favor of the Plaintiffs. To do otherwise would be reversible error.

Regardless, attached hereto as Exhibit E is the Affidavit of Scott Walker.  Walker's Affidavit contradicts most of Ammons' testimony in his own affidavit. Walker's Affidavit also establishes that the Ammons Defendants were not only aware that the Plaintiffs were providing marketing services to Pohl/Ammons, the Ammons Defendants participated in and directed the the Plaintiffs' marketing activities.

### A.    *This Court may exercise personal jurisdiction over Defendants Ammons and Ammons Law Firm as a co-venturer*

### 1.    Standard of Review

It should be noted that in responding to the Ammons Defendants' motion to dismiss, the Plaintiffs model their analysis off this Court's own joint jurisdictional analysis in its Order denying Williamson's Motion for Lack of Personal Jurisdiction.[6] "In a federal diversity action

---

[4] *Id.*
[5] Defendants cite *Hanback v. GGNSC Southaven, LLC*, 3:13-CV-00288-MPM, 2014, WL 350613 (N.D. Miss. July 15, 2014).
[6] *See* [Memorandum and Opinion Order, Doc. 103]

such as this, the reach of federal jurisdiction over non-resident defendants is measured by a two-step inquiry." *Smith v. DeWaltProds. Corp.,* 743 F.2d 277, 278 (5th Cir. 1984).[7] "First, the Court must determine whether the laws of Mississippi authorizes the assertion of personal jurisdiction against [defendants]"[8] *Id.* "If personal jurisdiction is authorized under Mississippi law, the Court then must ensure that assertion of personal jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment."[9] *Id.*

### 2.    Mississippi Long-Arm Statute

Mississippi's long-arm statute provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-5-57.[10] The Mississippi Supreme Court has held "that every member of a joint venture is transacting business in this State when one of the joint venturers is transacting in this State the business for which the joint venture was created."[11] *Scott Co. of California v. Enco Construction Co.*264 So.2d 409, 410 (Miss. 1972); See also *Hanback v. GGNSC Southaven, LLC,* 3:13-CV-00288-MPM, 2014, WL 350613 (N.D. Miss. July 15, 2014)(holding that a court's exercise of personal jurisdiction over a non-resident co-venturer is a logical extension of the Mississippi long-arm statute). Pursuant to Mississippi (and Texas) law, "all partners are jointly

---

[7] *Id.* at 10-11.
[8] *Id.* at 11.
[9] *Id.*
[10] *Id.*
[11] *Id.*

and severally liable for all obligations of the partnership." Miss. Code Ann. §79-13-306(1);

TBOC §152.304(a).

The Plaintiffs have alleged in their Complaints that Defendant Pohl had an ongoing joint

venture with Defendants Ammons and Ammons Law Firm for the purpose of representing

clients with personal injury claims arising out of motor vehicle accidents.[12] The Plaintiffs further

alleged that Defendant Pohl, on behalf of the Pohl/Ammons joint venture, asked Plaintiffs

Walker, Seymour, and Ladner to market to car accident claimants in exchange for a portion of

Pohl's attorney's fees.[13] The Plaintiffs marketed to car accident clients in several states,

including in Mississippi.

In denying Defendant Williamson's Motion to Dismiss for Lack of Personal Jurisdiction,

this Court found that if there is "neither a dispute that contracts existed between Plaintiffs and

Pohl for services to be performed at least in part in Mississippi nor a dispute that the alleged

tortious conduct occurred in part in Mississippi, if Plaintiffs have alleged enough facts in their

Amended Complaint [19] to support their theory that a joint venture existed between Williamson

and Pohl, they have established a *prima facie* case for personal jurisdiction under Mississippi

law." [14]

Similarly, Ammons has not disputed that contracts existed between Plaintiffs and Pohl to

market to car accident victims, nor does he dispute that the alleged tortious conduct occurred in

part in Mississippi. Therefore, if the Plaintiffs have alleged enough facts in their Complaints to

support their theory of the Pohl/Ammons joint venture, then they have established a *prima facie*

---

[12] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 34 and
Precision's Amended Complaint (Doc. 179) at ¶ 34.
[13] *Id*. at ¶ 118; 129-30.
[14] [Memorandum and Opinion Order, Doc. 103, pgs.11-12]

case for this Court's personal jurisdiction over Ammons. Further, documentary evidence attached hereto proves the existence of the Pohl/Ammons joint venture.

Ammons attempts to assert that this Court should apply Texas law to determine whether there was a joint venture. This Court has already ruled that it will apply Mississippi law because there is no conflict between the joint venture laws of Texas and Mississippi.[15] Pursuant to Mississippi law, a joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management." *Hults v. Tillman*, 480 So.2d 1134, 1142 (Miss. 1985).[16] "The three main questions that are considered in [joint venture] determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing." *Smith v. Redd*, 593 So.2d 989, 994 (Miss. 1991).[17]

Ammons discusses two additional factors required by Texas law: sharing in losses and liabilities and contributing money to the business. However, Plaintiffs' do not address these factors in this motion because this Court has already ruled that Mississippi law applies in determining whether a joint venture exists. Mississippi courts, unlike Texas courts, do not consider these two additional factors. Plaintiffs model their analysis off this Court's own analysis in its Order denying Williamson's Motion for Lack of Personal Jurisdiction.

### 3. Intent

The issue of intent goes to whether or not Ammons intended to form a joint venture with Pohl to find and prosecute auto accident cases. As discussed below, Ammons intended to and did form such a joint venture with Pohl.

---

[15] *Id*. at 10.
[16] *Id*. at 12.
[17] *Id*.

It is irrelevant whether Ammons intended to specifically retain the Plaintiffs for marketing services, or intended that Pohl to retain them.  Since Pohl was acting in furtherance of the joint venture in his dealings with the Plaintiffs, Ammons is liable as a co-venturer.

Nonetheless, it is abundantly clear that Ammons intentionally availed himself of the Plaintiffs' marketing services.  The Affidavit of Scott Walker establishes that Walker had substantial contact with Robert Ammons and with Terri Heins, an employee of Ammons Law Group, regarding the marketing services provided to Pohl/Ammons. Exhibit A.  The emails between Walker and Hein, attached to the Affidavit, confirm Walker's testimony.  Walker's Affidavit and attached emails establish that the Ammons Defendants were aware of and approved of the fact that the Plaintiffs' were providing marketing services to Pohl and Ammons.  Walker's Affidavit and the attached emails establish that the Ammons Defendants directly participated in and directed the Plaintiffs' marketing activities on occasion.  This alone is enough to show that the Ammons Defendants intended to and did form a joint venture with Pohl for the purpose of obtaining and representing auto accident clients.

 In addition, Ammons actively suggested sources of potential clients for the joint venture.  An email from Ammons to Pohl suggested that accidents relating to certain vehicle defects could be "good cases" for them. Exhibit B.  Another email from Ammons to Pohl suggests General Motors "ignition switch" cases Pohl should "find" for their joint venture.  In these emails, Ammons identifies of opportunities for the Pohl/Ammons joint venture.    The emails are additional evidence that Ammons intended that he and Pohl would work together to obtain these cases.

Ammons argues that the Plaintiffs cannot show the intent of Ammons and Pohl because the Plaintiffs have never met Ammons. This argument fails because the Plaintiffs' have alleged that Pohl and Ammons entered into a joint venture--- not that the Plaintiffs and Ammons entered into a joint venture. The fact that the Plaintiffs have never met Ammons is irrelevant to the question of whether Pohl and Ammons formed a joint venture.

Nonetheless, in direct contradiction of Ammons' testimony, Defendant Ammons and the staff of Defendant Ammons Law Group had substantial communications with the Plaintiffs and the contract workers that the Plaintiffs managed on behalf of Pohl/Ammons.  See Exhibit A. Ammons and at least two of the law firm's office staff knew that the Plaintiffs and the contract workers they managed were soliciting clients for Ammons/Pohl.  Discovery will likely turn up more such communications and get to the truth of the Ammons' Defendants interactions with the Plaintiffs, in Mississippi and otherwise.  The active involvement of the Ammons Defendants in the marketing activities on behalf of Pohl/Ammons is evidence of their intent to form a joint venture.

Ammons ineffectively argues that lack of intent is established by the "Operating Agreement" the Plaintiffs attached to their Second Amended Complaints. The Plaintiffs pled that *on behalf of the Pohl/Ammons joint venture*, Pohl agreed to pay the Plaintiffs thirty percent of attorney fees Pohl received from the Pohl/Ammons joint venture, and that Pohl drafted an "Operating Agreement" to memorialize the contract.[18] The fact that Ammons' name was not on the Operating Agreement is also immaterial to the question of whether Pohl and Ammons intended to create a joint venture. Further, even if it was true, it would make no difference that

---

[18] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 130;132 and Precision's Amended Complaint (Doc. 179) at ¶ 136; 137.

Ammons was "unaware" of any agreements that Pohl entered into with the Plaintiffs.[19]  Partners in a joint venture are jointly and severally liable for all obligations of the partnership. The Plaintiffs properly pled that Pohl entered into the contract with the Plaintiffs on behalf of the Pohl/Ammons joint venture, so Ammons is liable as a co-venturer for Pohl's obligation to pay the Plaintiffs, even if he was never aware of the contract Pohl entered into with the Plaintiffs on behalf of the Ammons/Pohl joint venture.

The fact of the matter is that the Ammons Defendants were aware that Pohl had recruited the Plaintiffs to provide marketing services, that the Plaintiffs were providing marketing services, and that Pohl must have promised the Plaintiffs some form of payment for their services.  If Ammons was not aware of the specific terms of the payment which Pohl promised to the Plaintiffs, that fact alone does not help.  The fact that Ammons had a joint venture with Pohl, and Pohl promised to pay the Plaintiffs for work they did on behalf of the joint venture, is enough to obligate the Ammons Defendants to pay the Plaintiffs.

The Plaintiffs have pled enough facts to show that Pohl and Ammons intended to and did enter into a joint venture to find and represent car accident clients. The Plaintiffs pled that Pohl and Ammons intended to and did form a joint venture for the purpose of obtaining and representing car accident clients.[20]  The emails in Exhibit A reflect that Ammons raised the idea with Pohl at least twice. The Plaintiffs pled that Pohl, on behalf of the Pohl/Ammons joint venture, asked the Plaintiffs to market to rollover and GM ignition failure claimants, the same ideas which Ammons suggested to Pohl via emails.[21]  Ammons and the staff of Ammons Law

---

[19] See [Ammons's Affidavit, Doc 218-1, ¶ 6]
[20] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 34; 153-54 and Precision's Amended Complaint (Doc. 179) at ¶ 34; 153-54.
[21] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 118; 130 and Precision's Amended Complaint (Doc. 179) at ¶ 118; 137.

Group communicated with and directed the Plaintiffs regarding those marketing services they provided on behalf of Pohl/Ammons.

Ammons has admitted in his affidavit that Michael Pohl referred him cases.[22]  Ammons admits the he accepted seven rollover car cases from Pohl.  Pohl/Ammons obtained these cases as a result of the marketing efforts of the Plaintiffs, pursuant to their agreement with the Pohl/Ammons joint venture.

Intent can be implied by the parties' action. *Hults*, 480 So. 2d at 1134.[23]  Ammons proved his intent by his own actions --- he suggested to Pohl the idea of soliciting auto accident cases for the joint venture; he participated and directed the marketing activities of the joint venture; he accepted the representation of cases obtained for the joint venture; and he obtained attorney fees on those cases and split them with Pohl.  It is plain that the Ammons Defendants intended to and did form a joint venture with Pohl for the purpose of finding auto accident clients and representing them.

### 4.    Profit Sharing

Profit sharing is the most important factor to consider in determining whether a joint venture exists. *Century 21 Deep South Props., Ltd. v. Keys*, 652 So.2d 707, 715 (Miss. 1995).[24]  As this Court has acknowledged, in the case of "*Braddock Law Firm, PLLC v. Becnel*, the Mississippi Court of Appeals held a similar fee splitting arrangement among attorneys to qualify as 'sharing profits' for the purposes of determining whether a joint venture existed. 949 So.2d

---

[22] See [Ammons's Affidavit, Doc 218-1, ¶ 9]
[23] [Memorandum and Opinion Order, Doc. 103, pg.12]
[24] *Id*. at 13.

38, 51 (Miss. Ct. App. 2006)." [25] "[T]his type of profit-sharing arrangement alone could provide sufficient evidence to support a finding of a joint venture." *Id*.[26]

The Ammons Defendants slyly avoid this issue in their motion to dismiss. They attempt to obfuscate the issue by again referencing the Operating Agreement in which Pohl, on behalf of the joint venture, agreed to share attorney's fees with the Plaintiffs. The Ammons Defendants state that there is no evidence of profit sharing because the Operating Agreement does not reference Ammons sharing profits with the Plaintiffs. Again, this is immaterial to the issue. The Plaintiffs are not alleging that Ammons directly agreed to share his profits with the Plaintiffs. Rather, the Plaintiffs allege that Ammons agreed to share attorney's fees with Pohl that resulted from their joint venture.

Plaintiffs have alleged that the Ammons Defendants shared attorney's fees with Pohl.[27] Ammons has admitted in his affidavit that Michael Pohl referred him cases.[28] Ammons' attorney has represented that Ammons accepted seven rollover car cases from Pohl. See Exhibit A. Pohl obtained these cases as a result of the marketing efforts of the Plaintiffs. Ammons prosecuted the cases and shared the resulting attorney's fees with Pohl. After this lawsuit commenced and Ammons became aware of the Plaintiffs' claims, Ammons agreed to hold out Pohl's share of the attorney's fees in those cases, pursuant to Pohl's agreement with the Plaintiffs. *Id*. These facts, taken together, amount to an admission by Ammons that he shared fees with Pohl.

Moreover, Precision is in possession of at least two contracts which Pohl/Ammons sent to potential clients through Precision.  Exhibit C. One contract states that "Ammons and Pohl will

---

[25] *Id*.

[26] *Id*.

[27] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 153-54 and Precision's Amended Complaint (Doc. 179) at ¶ 153-54.

[28] See [Ammons's Affidavit, Doc 218-1, ¶ 9]

divide any attorney's fees which results from Attorneys' representation of Client." *Id.* at 3. The other states that "Ammons and Pohl will share any attorney's fees which results from Attorneys' representation of Client." *Id*. at 5. Clearly, Ammons intended to and did share profits of the joint venture with Pohl.

### 5.    Control

As a starting point, "[l]ack of control is not enough by itself enough to disprove [a joint venture]." *Century 21*, 652 So.2d at 715.[29] "Partner-like control" may not be exerted by every party of a joint venture because circumstances will vary with the relationship between the parties. *Smith*, 593 So.2d at 994.[30] Even if the Plaintiffs allegations as to this element are "somewhat weak and conclusory," which is denied, this Court should still find that the Plaintiffs have sufficiently pled enough facts in their Complaints to support that a joint venture existed.[31]

The Ammons Defendants cite Texas case law in support of its argument that Ammons had no control over the joint venture. This Court has already deemed Texas law to be non-controlling as to this issue. Ammons misstates the controlling Mississippi law on the matter. Ammons represents that "partner-like control" requires proof that a partner "controlled the day-to-day operations or the direction of the business" and lists factors that a Court may consider.[32] As cited above, these are not the only factors a Court may consider in determining the existence of a joint venture, because the circumstances of a joint venture vary from relationship to relationship.

---

[29] [Memorandum and Opinion, Doc. 103, pg.14]

[30] *Id.*

[31] *Id.*

[32] Defendants cite *Carlson v. Brabham*, 2014-CA-00367-COA, 2016 WL 211664, at *5 (Miss. Ct. App, Jan. 19, 2016) and *Smith*, 593 So. 2d at 995. Contrary to Defendants' assertion, these cases do not establish the only factors a Court may consider.

In fact, the Ammons Defendants had substantial control over the joint venture.  As evidenced by the emails in Exhibit B, Ammons suggested to Pohl the types of cases Pohl should solicit for the joint venture (GM ignition switch and manufacturer recall cases).  Ammons also had control over which cases the joint venture accepted for representation.   The Ammons Defendants declined to accept at least two cases which he and Pohl had obtained for the joint venture through the Plaintiffs' marketing services.  See Exhibit D.   Further, as co-counsel with Pohl in the representation of the seven cases the Ammons Defendants accepted, the Ammons Defendants had shared responsibility and control regarding the prosecution of the cases. Ammons had substantial control over the joint venture's activities.

Plaintiffs have sufficiently pled enough facts to show that the Ammons Defendants had control in the joint venture. Plaintiffs pled that the Ammons Defendants "had the right to participate and did participate in the business of the partnership" and that Ammons controlled the joint venture by "prosecut[ing] the claims."[33] Ammons has admitted prosecuting claims referred to him by Pohl and to receiving attorney's fees on those claims. Ammons himself has proved the control element.

Even if this Court finds that the Plaintiffs' allegations as to the control element are weak and conclusory, lack of control is not enough to disprove a joint venture. The Plaintiffs have pled and shown enough facts to at least support the other two factors, and this Court should find that the Plaintiffs' have sufficiently pled and shown enough facts to support that a joint venture existed.

---

[33] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 34; 154 and Precision's Amended Complaint (Doc. 179) at ¶ 34;154.

### III.   MINIMUM CONTACTS

**A.   Fourteenth Amendment Due Process Clause**

"In order for a federal court to exercise personal jurisdiction over a nonresident in compliance with the Due Process Clause of the Fourteenth Amendment, it must find that 1) "the defendant purposefully established 'minimum contacts' with the forum state" and 2) "entertainment of the suit against the nonresident would not offend 'traditional notions of fair play and substantial justice.'" *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) (citing *Asahi Metal Indus. Co. v. Superior Court*, 280 U.S. 102, 105, 107 S.Ct. 1026, 1029, 94 L. Ed. 2d 92(1987))."[34] The Plaintiffs contention that this Court may exercise personal jurisdiction over the Ammons Defendants is based on the Ammons Defendants' participation in a joint venture with Pohl. This Court has assumed that Pohl's contacts with Mississippi are sufficient under the "minimum contacts" test, absent argument to the contrary.[35] The Ammons Defendants have made no argument that Pohl's contacts with Mississippi cannot by imputed to the Ammons Defendants by virtue of their joint venture with Pohl. The Ammons Defendants argue only that this Court's exercise of personal jurisdiction over them would offend "traditional notions of fair play and substantial justice."

**B.   Minimum Contacts**

"Multiple district courts have found that the contacts of one co-venturer can be imputed to another in the exercise of personal jurisdiction over a non-resident when that co-venturer is acting in furtherance of the joint venture. *See Hanback v. GGNSC Southaven, LLC*, No. 3:13-CV-00288-MPM-SAA, 2014 WL 3530613, at *3 (N.D. Miss. 2014); *Nolan v. Boeing Co*., 736 F.Supp. 120, 127 (E.D. La. 1990); *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd*.,

---

[34] [Memorandum and Opinion, Doc. 103, pg.14-15]
[35] *Id*. at 15.

116 F.R.D. 477, 479-80 (S.D.N.Y. 1987); *Aigner v. Bell Helicopters, Inc*., 86 F.R.D. 532, 540-41 (N.D. Ill. 1980)."[36] The Mississippi Supreme Court has held "that every member of a joint venture is transacting business in this State when one of the joint venturers is transacting in this State the business for which the joint venture was created." *Scott Co. of California v. Enco Construction Co*.264 So.2d 409, 410 (Miss. 1972). Further, pursuant to Mississippi (and Texas) law, "all partners are jointly and severally liable for all obligations of the partnership." Miss. Code Ann. §79-13-306(1); TBOC §152.304(a).

As discussed above the Plaintiffs have established that they have pled sufficient facts to support the existence of a joint venture between Pohl and the Ammons Defendants. The Ammons Defendants have not argued that the contacts of Pohl, their co-venturer, are not sufficient to satisfy the "minimum contacts" for this Court to exercise personal jurisdiction over them.  However, in ruling on this same point as to Defendant Williamson's similar joint venture with Pohl, this Court has noted, "this argument would surely fail because Plaintiffs have shown that Pohl negotiated and signed contracts with them in Mississippi, for services to be performed in large part in Mississippi, and that such contracts form the basis for the action before the Court."[37]

Ammons suggest that Pohl does not have sufficient minimum contacts with Mississippi because the contract between Pohl and the Plaintiffs for the Plaintiffs to provide marketing services to car accident victims does not contain a reference to work to be performed in

---

[36] *Id.*

[37] *Id*. at 15-16 (citing May Operating Agreement [19-2]; July Operating Agreement [19-4].Plaintiffs also filed the July Operating Agreement as an exhibit to their Second Amended Complaint [Doc. 166-1].

Mississippi.  However, a review of the First Amended Complaint reflects a multitude of Mississippi contacts by the Pohl/Ammons joint venture

First, the joint venture's contract[38] with the Plaintiffs was negotiated and executed in Mississippi. While the contract does not refer to the place where the services were to be performed, the Plaintiffs sufficiently pled that the services, or a major portion of the services were to be performed in Mississippi.

> From its inception in January 2013 through October 2014, PMG provided services to the Williamson/Pohl joint venture and the Pohl/Ammons joint venture. **From its inception in January 2013 until October 2014, Pohl, on behalf of Williamson/Pohl joint venture and the** <u>**Pohl/Ammons joint venture,**</u> **entirely funded all of the operations of [Precision Marketing Group] and controlled all aspects of PMG, including, but not limited to, leasing the office space, making staff hiring decisions; dictating the invoicing and payment structure; dictating and controlling the marketing activities; and requiring that all business decisions be approved by Pohl.**

> On behalf of the Pohl/Ammons joint venture, Pohl was still operating his personal injury marketing organization. **Pohl had separately instructed Ladner/Walker/Seymour not to shut down the PMG office entirely, but to keep it open with one staff person, and to retain certain of the workers. On behalf of the Pohl/Ammons joint venture, Pohl continued to pay the expenses of PMG, and to operate his marketing activities for personal injury claims through PMG.**

> In early 2013, Pohl and Dane Maxwell had terminated their special arrangement. Subsequently, Pohl had a meeting with Ladner/Walker/Seymour. Pohl informed them that his "main business" was representing rollover clients. Pohl asked them to start marketing to "rollover" accident claimants on behalf of the Pohl/Ammons joint venture. On behalf of the Pohl/Ammons joint venture, Pohl agreed to pay Walker/Seymour/Ladner, collectively, up to thirty percent of the attorney fees Pohl received from the cases, plus expenses. Pohl instructed them to submit their expenses for this work through PMG alongside the BP/Deepwater Horizon Settlement marketing expenses. From early 2013 through October 2014, Ladner/Seymour/Walker conducted marketing efforts to obtain personal injury clients for the Pohl/Ammons joint venture.

> **Ladner/Seymour/Walker also provided management services for the Pohl/Ammons joint venture's contract workers and administered payment of the contract workers' fees and expenses through PMG.** On behalf of the Pohl/Ammons joint venture, Pohl agreed

---

[38] The contract giving rise to the Plaintiffs' claims regarding car accident cases against Pohl and Ammons was attached to the Plaintiffs' Complaints. See [Doc. 166-1].

to pay PMG a 3% "pass-through" fee on all amounts which Pohl paid through PMG for fees and expenses of the Pohl/Ammons joint venture's marketing efforts.

**On behalf of the Pohl/Ammons joint venture, Pohl instructed Walker and Ladner to form two limited liability companies in Mississippi under their own names. One was Helping Hands Group, LLC and the other was GM Settlement Verification Team, LLC. Pohl conducted various "pass-through" activities under the auspices of those two companies. Pohl funded, managed, controlled and operated the business of those two companies. Pohl instructed Walker and Ladner how to set up the companies and how the businesses would work. Pohl instructed them to set up a website and print brochures, and provided them with the content. Pohl provided all of the financing for the companies. Pohl used the two companies to "pass-through" payments to various persons and entities.**

Through September 2014, Walker/Seymour/Ladner procured through their marketing services approximately sixty car accident (including, but not limited to, rollover and GM ignition failure) cases for the Pohl/Ammons joint venture. Almost immediately, Pohl and Ammons began receiving attorney fees from those cases. However, Pohl did not pay any of the agreed share of his fees to Walker/Seymour/Ladner.

The contract was between Pohl and the "GM Settlement Verification Team, LLC." *Id.* The Plaintiffs pled that Pohl, on behalf of the Pohl/Ammons joint venture, instructed the Plaintiffs to form two limited liability companies *in Mississippi*, one of which was the GM Settlement Verification Team (GMSV).[39] The Plaintiffs provided marketing services to car accident clients through GMSV.[40] All of the money that Pohl "passed through" to these clients passed through Mississippi.[41] Further, the Plaintiffs, through PMG, provided marketing services to the Ammons/Pohl joint venture.[42] Pohl, on behalf of the Ammons/Pohl joint venture, helped the Plaintiffs establish a PMG office in Gulfport, Mississippi.[43] All of the contract workers

---

[39] Walker, Seymour and Ladner's Second Amended Complaint (Doc. 166) at ¶ 135 and Precision's Amended Complaint (Doc. 179) at ¶ 135.
[40] *Id.* at 136.
[41] *Id.* at 135.
[42] *Id.* at 94-97.
[43] *Id.*

soliciting clients on behalf of the Pohl/Ammons joint venture were located in Mississippi.[44] The Plaintiffs and contract workers were actively soliciting clients for the Pohl/Ammons joint venture in Mississippi and in other states. At least two potential rollover accident clients were solicited in Mississippi. *See* Exhibit B. The Plaintiffs procured approximately sixty car accident cases for the Pohl/Ammons joint venture through their *Mississippi* organizations. [45]

Finally, the Affidavit of Scott Walker establishes that the Ammons Defendants were fully aware that Precision Marketing Group was providing management and administrative services for the contract workers who were providing marketing services to Ammons and Pohl in regard to auto accident victims who were potential clients for Ammons and Pohl.  The Affidavit of Scott Walker establishes that the Ammons Defendants were fully aware that Precision's office was in Mississippi, and that Precision was rendering its management and administrative services for the joint venture there.  Exhibit A.

The Affidavit of Scott Walker establishes that the Ammons Defendants were fully aware that Kirk Ladner and Scott Walker were providing marketing services to the joint venture and that Ladner and Walker resided in Mississippi.  The Affidavit of Scott Walker also establishes that the Plaintiffs provided marketing services on behalf of the Pohl/Ammons joint venture as to at least two potential clients who resided in Mississippi.  Exhibit A.

It is clear that the Ammons Defendants have sufficient minimum contacts with Mississippi, both directly and as co-ventures with Pohl.   The Ammons Defendants do not contest the minimum contacts issue other than to protest the existence of the joint venture.[46] The

---

[44] *Id.*
[45] I*d.* at 136.
[46] [Memorandum and Opinion, Doc. 103, pg.16]

Ammons Defendants had the minimum contacts with Mississippi necessary under the Due Process Clause for this Court to exercise personal jurisdiction over them.

To the extent this Court finds that the Plaintiffs have not alleged enough sufficient contacts to justify personal jurisdiction, the Plaintiffs request that this Court stay its consideration of this motion and allow discovery on the minimum contacts issue. "The Court possesses a substantial amount of discretion when addressing requests for jurisdictional discovery." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276-77 (5th Cir. 2006)

The Defendants have not yet produced information relating to the car accident cases. For instance, all of the information relating to the GM ignition switch accident cases the Plaintiffs solicited on behalf of the Ammons/Pohl venture is in the hands of the Defendants. Discovery into this matter would shed more light on the minimum contacts issue and the Ammons/Pohl joint venture in general. It would prejudice the Plaintiffs if this Court were to dismiss its claims against the Ammons Defendants without allowing discovery into such matters. The Court should also consider that many of the assertions which Ammons made in his motion and in his Affidavit were proved untrue by the testimony of Scott Walker and the documentary evidence.

### C.    Fair Play and Substantial Justice

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). To show that an exercise of jurisdiction would be unfair under due process, "the defendant must make a 'compelling case' against it." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).[47] The Ammons Defendants have not made a compelling case that this Court's exercise of personal

---

[47] *Id.*

jurisdiction over him would be unfair. Ammons has simply argued that this Court's jurisdiction over the Ammons Defendants would be unfair because Ammons is a busy Texas lawyer who lives in Texas. This does not raise to the level of unfairness required under due process.

The Ammons Defendants further argue that to the extent they entered into a joint venture, they did so in Texas and "would have expected issues arising out of that joint venture would be litigated in Texas." This statement alone proves the existence of joint venture--- if the Ammons Defendants could contemplate the jurisdiction of litigation arising from the joint venture, then surely they were aware that the joint venture existed.

This Court's exercise of personal jurisdiction over the Ammons Defendants would not offend traditional notions of fair play and substantial justice.

### 4.     Pohl, Ammons, and the Ammons Firm were each other's agents

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner ... for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership...." *Tishomingo R. Co., Inc. v. BellSouth Telecommunications, Inc*., 819 F. Supp. 2d 632 (N.D. Miss 2010).

Pohl and the Ammons Defendants were partners in a joint venture for the purpose of obtaining and representing car accident clients. Therefore, the action of Pohl in contracting with the Plaintiffs to market to car accident clients, is imputed to and binding on the Ammons Defendants.

### IV.     CONCLUSION

The Plaintiffs have made a *prima facie* case that this Court's personal jurisdiction over the Ammons Defendants is proper. Any conflicts between the facts asserted by the Plaintiffs and the Ammons Defendants must be resolved in favor of the Plaintiffs. The Plaintiffs have pled

sufficient facts to prove the existence of a joint venture between the Ammons Defendants and Pohl. This Court has already held that Pohl has sufficient minimum contacts with Mississippi for this Court to exercise jurisdiction over him. This Court's personal jurisdiction over Pohl may be imputed to the Ammons Defendants, as Pohl's co-venturer.

Moreover, Precision has presented evidence that the Ammons Defendants had substantial direct contacts and intentionally availed themselves of the services of the Plaintiffs for services to be largely performed in Mississippi. The Ammons Defendants have the minimum contacts for jurisdiction even in the absence of a joint venture with Pohl.

This Court's exercise of personal jurisdiction over the Ammons Defendants does not offend traditional notions of fair play and substantial justice.  For all of the foregoing reasons, the Plaintiffs respectfully request that this Court deny the Ammons Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully submitted, this 29th day of April, 2016.


BY:   */s/ Tina L. Nicholson*
      TINA L. NICHOLSON
      MSB #99643
      BAKER NICHOLSON, LLP
      2402 Dunlavy Street
      Houston, Texas 77006
      Telephone: (713) 341-0030
      Facsimile: (888) 244-2618
      nicholson@bakernicholson.com

      **ATTORNEY FOR**
      **PRECISION MARKETING GROUP, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of April, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>*/s/ Tina L. Nicholson*</u>
TINA L. NICHOLSON