**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**SCOTT WALKER, et al.**                                                    **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION NO. 1:14-CV-381-KS-JCG**

**JIMMY WILLIAMSON, et al.**                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court the Motion for Partial Summary Judgment [396] filed by Plaintiff Steve Seymour, individually and d/b/a Diamond Consulting and/or d/b/a Precision Marketing Group, LLC ("Seymour"); the Motion for Summary Judgment [409] filed by Defendants Cyndi Rusnak and Cyndi Rusnak, PLLC (collectively "Rusnak"); the Motion for Partial Summary Judgment [411] and Motion to Strike Summary Judgment Evidence Offered to Support Precision's Motion for Summary Judgment ("Motion to Strike Precision's Evidence") [445] filed by Defendant Michael A. Pohl, individually and d/b/a The Law Office of Michael A. Pohl ("Pohl"); the Motion for Partial Summary Judgment [414] and Motion to Strike Evidence Submitted by Pohl in Support of his Motion for Summary Judgment ("Motion to Strike Pohl's Evidence") [446] filed by Plaintiff Precision Marketing Group, LLC, ("Precision"); and the Motion for Summary Judgment [418] filed by Defendant Jimmy Williamson, individually and/or as Director and President of Jimmy Williamson, P.C. ("Williamson").  After considering the submissions of the parties, the record, and the applicable law, the Court finds the following:

1.  Seymour's Motion for Partial Summary Judgment [396] is not well taken and should be denied;

2.  Rusnak's Motion for Summary Judgment [409] is not well taken and should be denied;

3.      Pohl's Motion for Partial Summary Judgment [411] should be granted in part and denied in part;

4.      Precision's Motion for Partial Summary Judgment [414] is not well taken and should be denied;

5.      Williamson's Motion for Summary Judgment [418] is not well taken and should be denied;

6.      Pohl's Motion to Strike Precision's Evidence [445] should be denied as moot; and

7.      Precision's Motion to Strike Pohl's Evidence [446] should be denied as moot.

## I. BACKGROUND

The current action was commenced on October 18, 2014, by Plaintiffs Scott Walker, individually and d/b/a Maxwell & Walker Consulting Group, LLC, and/or d/b/a Precision Marketing Group, LLC ("Walker"); Kirk D. Ladner, individually and d/b/a The Ladner Group and/or d/b/a Precision Marketing Group, LLC ("Ladner"); Seymour; and Precision (collectively "Plaintiffs") against Defendants Williamson and Pohl.  Plaintiffs claim that Pohl and Williamson joined together in a joint venture or partnership in order to represent Mississippi clients in their claims against British Petroleum ("BP") in connection with the 2010 Deepwater Horizon oil spill. The two then contracted with Plaintiffs to provide marketing and public relations services for this joint venture.

Plaintiffs brought suit for breach of contract, conscious or negligent bad faith/breach of good faith and fair dealing, quantum meruit/unjust enrichment, and fraud/fraudulent inducement/ fraudulent misrepresentation.  On May 12, 2015, Precision filed a Notice [75] stating that Walker, Seymour, and Ladner had assigned their chose of action and/or interests in this action to Precision.

Plaintiffs filed amended complaints[1] in March 2016, for the first time alleging that Defendant Rusnak was part of the joint venture between Pohl and Williams as well.

## II.  MOTIONS FOR SUMMARY JUDGMENT [396][409][411][414][418]

### A.      Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.* "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).   "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).  Where the burden of proof at trial rests on the movant, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor."  *Meecorp Capital Mkts. LLC v. Tex-Wave Indus. LP*, 265 F.App'x 155, 157 (5th Cir. 2008) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med.*

---

[1]Plaintiffs Walker, Ladner, and Seymour filed their Second Amended Complaint [166] on March 2, 2016, and Plaintiff Precision filed its Amended Complaint [179] on March 16, 2016.

*Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

As discussed at length by this Court in its past orders, Mississippi law is the law that should properly be applied.  (*See, e.g.*, Order [103] at pp. 5-10.)

## B.     Seymour's Motion for Partial Summary Judgment [396]

In his Motion for Partial Summary Judgment [396], Seymour seeks for the Court to hold invalid the assignment of his contract rights and chose in action to Precision.  In effect, Seymour is asking the Court to enter judgment on a contract dispute that is not currently before it.  Seymour has no pending cross-claim against his co-plaintiff Precision, and it is not clear that the Court would have subject matter jurisdiction over such a claim.[1]  Because there is no claim for which the Court can issue judgment, partial or otherwise, this motion must be **denied**.

## A.     Rusnak's Motion for Summary Judgment [409]

Rusnak's arguments in her Motion for Summary Judgment [409] are identical to those brought by her and her fellow defendants in their previous motions to dismiss.  Specifically, she

---

[1] The Court is sitting in diversity, and both Seymour and Precision are domiciled in Mississippi.

4

argues that there is no evidence of a joint venture between herself, Williamson, and Pohl, and that, in the event that the Court finds sufficient evidence of a joint venture, the purported contract between Defendants and Plaintiffs is unenforceable as a matter of law.

### 1. Joint Venture

Under Mississippi law, a joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management." *Hults v. Tillman*, 480, So.2d 1134, 1142 (Miss. 1985). "The three main questions that are considered in [a joint venture] determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing." *Smith v. Redd*, 593 So.2d 989, 994 (Miss. 1991).

### a. Intent

While actual intent is necessary to find that a joint venture existed, this intent can be implied by the parties' actions. *Hults v. Tillman*, 80 So.2d 1134, 1143 (Miss. 1985). Rusnak does not dispute that her name appeared on the letterhead of the informational folder distributed by Plaintiffs, nor does she dispute that this folder contained a letter from "The Law Office of Michael A. Pohl." Though both Williamson and Rusnak maintain that "Williamson & Rusnak" was a "trade name" they were using when, in fact, they were not partners, the Mississippi Rules of Professional Conduct proscribes using names such as this when lawyers are not partners, as they suggest partnership. *See* Miss. Rules of Prof'l Conduct R. 7.7 cmt. The Court previously found that the letterhead on the informational folder in combination with the references to Pohl was enough to imply a partnership among the three defendants and defeat Rusnak's motion to dismiss. Because Plaintiffs have adduced this evidence, the Court must find that there is at least a factual

dispute as to Rusnak's intent to enter a joint venture with Williamson and Pohl, regardless of testimony from all defendants denying such a venture.

### b.    Control

"Partner-like control" may not be exerted by every party of a joint venture because circumstances will vary with the relationship between the parties. *Smith*, 593 So.2d at 994. Here, though, Plaintiffs have brought forward evidence that Rusnak had some control over the joint venture. Walker states that it was Rusnak that directed the marketing activities of his company. (*See* Walker Affidavit [247-1] at ¶ 5.) Plaintiffs have also produced e-mails between Walker and Rusnak showing that she was involved in Plaintiffs' efforts to promote the joint venture in Mississippi. (*See* E-mails [247-2].) As held in the Court's previous Order [273], these communications are enough to establish that Rusnak exercised some control over the actions of the joint venture.

### c.    Profit sharing

Profit sharing is the most important factor in determining whether a joint venture exists. *Century 21 Deep South Props., Ltd. v. Keys*, 652 So.2d 707, 715 (Miss. 1995). Under Mississippi state court precedent, an arrangement to split legal fees is sufficient for a finding of profit sharing when determining whether a joint venture existed. *See Braddock Law Firm, PLLC v. Becnel*, 949 So.2d 38, 51 (Miss. Ct. App. 2006). In that case, however, there was a set arrangement under which plaintiff was owed a sixty percent share in the fees. *Id.* at 50. However, in this case, though Williamson admits that he would share profits for BP claims with Rusnak even in those cases where she did no work,[2] he testified that if and what he paid her was "in [his] discretion."

---

[2] Williamson never uses the word "profits," which Rusnak emphasizes in her arguments. However, he refers to money left over after all bills and expenses are paid and after he has ensured that his firm was "financially stable." (Williamson Depo. [247-1] at 31:21-25.) It is obvious that this money would be "profits" and not merely "revenue" as Rusnak contends.

(Williamson Depo. [247-1] at 31:21-25.)  What share Williamson gave Rusnak was his decision, even if "in reality, it [ was] a collaborative process," and was based on the amount of work she put in on the BP cases, if any, or on other cases, which would free Williamson to pursue the BP cases. (*Id.* at 32:6-20.)  Though this arrangement is less formal than the one in *Braddock*, a reasonable jury could find from this evidence that Rusnak received a share of the profits from the joint venture.

Because Plaintiffs have adduced enough evidence to present a question of fact on each of the requirements for a joint venture under Mississippi law, Rusnak's Motion for Summary Judgment [409] will be **denied** as to this argument.

### 2.    Unenforceable contract

Rusnak argues that the original contract between the joint venture and Plaintiffs is unenforceable as its terms require wrongful conduct on the part of the Plaintiffs to fulfill it.  Rusnak recognizes that the Court already addressed and discarded this argument in its previous Order [252], finding that there was nothing to suggest that Plaintiffs' conduct under the contract would be wrongful as they are not lawyers and would not be committing professional misconduct under the contract.  (*See* Order [252] at pp. 4-5.)  Rusnak contends, though, that Plaintiffs' depositions "now show that the Plaintiffs did indeed, 'give money or some other thing of value to Defendants' potential clients in order to induce them to commence or continue [sic] the prosecution of any judicial action,'" in violation of Mississippi law.  (Memo. in Support [410] at pp. 14-15.)  However, Rusnak does not point to any specific testimony in these depositions that support this argument, instead generally referencing the Plaintiffs' depositions, each of which is over two hundred pages long.  As this is an affirmative defense, it is the burden of Rusnak to point to specific evidence to show summary judgment is appropriate, and the district court does not bear the burden to sift through voluminous records to find unspecified evidence.  *See, e.g., Ragas v. Tenn. Gas Pipeline*

*Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  Rusnak's Motion for Summary Judgment [409] will therefore be **denied** under this argument as well.

### D.   Pohl's Motion for Partial Summary Judgment [411]

#### 1.   Measure of Damages for Breach of Contract/Quantum Meruit

Pohl argues that, under the relevant contracts, he agreed to pay Plaintiffs no more than a percentage of his attorney's fees in exchange for their marketing services.  Specifically, he claims that Walker was to receive 12 percent of the fees, Seymour was to receive 12 percent, and Ladner was to receive 6 percent, for a total of no more than 30 percent under the first agreement.  (*See* Consulting Agreement [411-1]; May Agreement [411-2].)  Then, in July 2012, this was changed to 7.5 percent to Walker, 7.5 percent to Seymour, and 7.5 to Ladner, for a total of no more than 22.5 percent.  (*See* July Agreement [411-3].)

It is clear from Walker and Seymour's depositions that this was Plaintiffs' understanding of the contract as well.  Walker testified that the contract with Defendants "was for 30 percent" and "that contract was for 22.5 percent lowered by Jimmy [Williamson]," with each Plaintiff to receive 7.5 percent.  (Walker Depo. [411-5] at 205:6-19.)  He went on to say that "my belief is that the first contract was 30 percent of Michael Pohl's 40 percent.  Jimmy and him were split 60/40. And then the second contract was for 22-and-a-half."  (*Id.* at 206:21-25.)  Seymour testified that the agreement between Plaintiffs and Pohl was for "percentages."  (Seymour Depo. [411-6] at 170:8-14.)  Furthermore, in their responses to Pohl's motion, Plaintiffs do not argue that these percentages are not the correct measure of damages should the Court find that the contracts between them and Pohl are enforceable.  Therefore, the Court will **grant** Pohl's Motion for Partial Summary Judgment [411] with respect to the breach of contract claims against him, and the damages for these claims shall be capped at the percentages in the respective contracts.

Plaintiffs contend, though, that the correct method of recovery in this case is through their quantum meruit claim.  They argue that there was no meeting of the minds to form a valid contract because Pohl believed they were contracting for an hourly rate that was never determined and Plaintiffs believed they were contracting for a percentage of attorney's fees.  Curiously, Plaintiffs go on to argue that, because there is no valid contract, they should receive not the percentage amounts they expected to receive, but rather an hourly rate that is fair and reasonable under the circumstances.  Even if the Court were to accept that there are no enforceable contracts, Plaintiffs' damages would still be capped at the percentages they expected to receive.

Under Mississippi law, quantum meruit recovery is "a contract remedy which may be premised on [an] express or implied contract" and is premised on "the claimant's reasonable expectation of compensation."  *Tupelo Redev. Agency v. Gray Corp., Inc.*, 972 So.2d 495, 514 (Miss. 2007) (quoting *In Re Estate of Fitzner*, 881 So.2d 164, 173 (Miss. 2003)) (emphasis omitted).  Even where the agreement between parties has been found to be unenforceable, Mississippi courts have found it proper to reference these agreements and the claimant's expectations in what they were to be compensated when applying the theory of quantum meruit. *See Williams v. Ellis*, 176 So.3d 133, 140-41 (Miss. Ct. App. 2015).  Plaintiffs performed their work under the contracts, which they assumed were enforceable, under the belief that they would receive the specified percentages of Pohl's attorney's fees.  The Court finds that the percentages, then, are the proper measure of damages under Plaintiffs' quantum meruit theory and will therefore **grant** Pohl's motion with respect to the quantum meruit claims as well.

### 2.     Measure of Damages for Breach of Good Faith

Pohl also argues that the same percentage cap on damages applies to Plaintiffs' claim for breach of the covenant of good faith and fair dealing.  Under Mississippi law, "the appropriate

remedy for the breach of the covenant of good faith is the measure of expectancy type damages." *Cenac v. Murry*, 609 So.2d 1257, 1273 (Miss. 1992).  Plaintiffs offer no argument that damages should not be capped by the percentages of the contracts for this claim.[3]  Accordingly, the Court finds that the compensatory damages for Plaintiffs' breach of the covenant of good faith and fair dealing claim should be capped by the percentages contained in the contracts,[4] and Pohl's motion will be **granted** in this respect.

### 3.      Assignment to Precision

Pohl contends that Walker, Ladner, and Seymour's assignment of the claims and causes in this action to Precision is invalid because it is a champertous assignment.  A champertous assignment is defined as a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Sneed v. Ford Motor Co.*, 735 So.2d 306 (Miss. 1999) (quoting BLACK'S LAW DICTIONARY 157 (6th ed. 1990)).  These types of assignments are prohibited under Mississippi law.  *See* Miss. Code Ann. § 97-9-11.  Pohl argues that because Scott Favre ("Favre"), who is currently the sole member of Precision, is a stranger to this action, the assignment to Precision is champertous and prohibited.

Precision, however, is a Mississippi limited liability company whose only members at the time of filing this lawsuit were Walker, Seymour, and Ladner, and the LLC entity was a properly joined plaintiff in this action.  (*See* Complaint [1].)  It is clear then that, at the onset of this action, Precision was not a stranger to this suit.  Pohl has given the Court no reason to pierce the corporate veil of Precision and find any assignments of claims to Precision as invalid champertous assignments because the membership of the LLC has changed.  Without further evidence showing

---

[3] Plaintiffs argue that no contract exists.  A contract is necessary for a claim for the breach of the covenant of good faith and fair dealing to succeed.
[4] This ruling does not affect whatever punitive damages Plaintiffs may seek to establish under this claim.

that such a piercing is proper, the Court will **deny** Pohl's Motion for Partial Summary Judgment [411] with respect to the assignment to Precision.

### E.     Precision's Motion for Partial Summary Judgment [414]

In its Motion for Partial Summary Judgment [414],[5] Precision asks that the Court enter summary judgment on its quantum meruit claim for its marketing work related to the BP claims. "Quantum meruit recovery is a contract remedy which may be premised either on express or 'implied' contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation." *Tupelo Redev. Agency v. Gray Corp., Inc.*, 972 So.2d 495, 514 (Miss. 2007) (quoting *In Re Estate of Fitzner*, 881 So.2d 164, 173 (Miss. 2003)) (emphasis omitted).  As the party with the burden of proof at trial, to receive summary judgment on this claim, Precision must adduce undisputed evidence that establishes each of the following elements:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.

*Id.* at 514-15 (citations omitted).

> Precision only briefly addresses these elements of their quantum meruit claim by stating:

> In this case, it is undisputed that the Plaintiffs rendered valuable services to Pohl. It is undisputed that Pohl used and enjoyed the Plaintiffs services, to the tune of approximately 12,000 potential clients.  It is undisputed that Pohl expected to pay Plaintiffs for their services.  Quantum meruit is the proper measure of damages in this case.

(Precision Memo. in Support [415] at p. 5.)  At no point, however, does Precision point to any specific evidence to support these statements.  At the summary judgment stage, the Court is not

---

[5] Walker and Ladner have joined in this motion.  (*See* Joinder [424].)

permitted to accept conclusory allegations, *see Oliver*, 276 F.3d at 744, and Precision, as the party with the burden at trial, "must establish beyond peradventure *all* of the essential elements" of its quantum meruit claim to receive summary judgment. *See Meecorp*, 265 F.App'x at 157 (quoting *Fontenot*, 780 F.2d at 1194). If, as Precision argues, these elements of its claim are undisputed, it is Precision's responsibility at the summary judgment stage to point to specific evidence in the record demonstrating this. The Court does not bear the burden to sift through voluminous records to find unspecified evidence. *See, e.g., Ragas*, 136 F.3d at 458.

Because Precision has failed to adduce evidence to establish the essential elements of its quantum meruit claim, the Court will **deny** its Motion for Partial Summary Judgment [414].

### F.     Williamson's Motion for Summary Judgment [418]

Williamson's Motion for Summary Judgment [418] is rooted in Texas law, which he contends is in conflict with Mississippi law on the issue of whether a joint venture existed. This argument is based in his belief that Mississippi law equates lost revenue with lost profits. This is an incorrect statement of the law of Mississippi. *See Braddock Law Firm, PLLC v. Becnel*, 949 So.2d 38, 51 (Miss. 2006) (stating that there is a distinction "between sharing in the profits and sharing in gross receipts" under Mississippi law). Because there is no such conflict, the Court's conflict of law analysis in its previous Order [103] was correct and will not be disturbed. Williamson's motion will therefore be evaluated under Mississippi law.

Under Mississippi law, a joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management." *Hults v. Tillman*, 480, So.2d 1134, 1142 (Miss. 1985). "The three main questions that are considered in [a joint venture] determination are

(1) the intent of the parties, (2) the control question, and (3) profit sharing." *Smith v. Redd*, 593 So.2d 989, 994 (Miss. 1991).

### 1.   Intent

While actual intent is necessary to find that a joint venture existed, this intent can be implied by the parties' actions. *Hults v. Tillman*, 80 So.2d 1134, 1143 (Miss. 1985). As previously stated in the Court's analysis of Rusnak's motion, *see supra*, II.C.1.a, Williamson's name appeared on the letterhead of letter inside the binder given to potential BP claimants, along with his resume, business card, and an employment contract bearing both Williamson's and Pohl's names. (*See* Binder [19-5].) In fact, Williamson's name appeared throughout this binder, and as the Court previously found, this is enough to imply an intent to be seen as partners. The Court therefore finds that Plaintiffs have adduced enough evidence to survive summary judgment on the intent element of the joint venture analysis.

### 2.   Control

"Partner-like control" may not be exerted by every party of a joint venture because circumstances will vary with the relationship between the parties. *Smith*, 593 So.2d at 994. Here, though, there is evidence that Williamson directed the efforts of Plaintiffs' employees. (*See* Santana Affidavit [447-2] at ¶ 13.) This is enough for Plaintiffs to survive summary judgment on the control element of their claim.

### 3.   Profit sharing

Profit sharing is the most important factor in determining whether a joint venture exists. *Century 21 Deep South Props., Ltd. v. Keys*, 652 So.2d 707, 715 (Miss. 1995). Under Mississippi state court precedent, an arrangement to split legal fees is sufficient for a finding of profit sharing when determining whether a joint venture existed. *See Braddock Law Firm, PLLC v. Becnel*, 949

So.2d 38, 51 (Miss. Ct. App. 2006).  In that case, there was a set arrangement under which plaintiff was owed a sixty percent share in the fees.  *Id.* at 50.  Similarly, in this case, Pohl was to receive 40 percent of the attorney's fees generated by the BP claims, and Williamson was to receive 60 percent.  (*See* Williamson Depo. [447-1] at 199:24-200:6.)  This is enough for the Court to find the profit sharing element of the joint venture claim to have been met.

Finding that evidence has been brought forward on all three elements of a joint venture, the Court will **deny** Williamson's Motion for Summary Judgment [418].

### III.  MOTIONS TO STRIKE [445][446]

#### A.      Motion to Strike Precision's Evidence [445]

In his Motion to Strike Precision's Evidence [445], Pohl argues that the affidavits of Walker and Ladner should be stricken from consideration under Precision's Motion for Partial Summary Judgment [414].  As the Court finds that Precision's motion should be denied regardless of this evidence, Pohl's Motion to Strike Precision's Evidence [445] will be **denied as moot**.

#### B.      Motion to Strike Pohl's Evidence [446]

In its Motion to Strike Pohl's Evidence [446], Precision argues that the deposition excerpts of Pohl should be stricken from consideration under Pohl's Motion for Partial Summary Judgment [411] because the certification page of the deposition is not signed by the court reporter.  The Court would first note that Plaintiffs attach the same deposition of Pohl in its entirety to their response to the motion for partial summary judgment, leading the Court to the conclusion that Precision has no objection to the excerpts authenticity.  Rather, Precision seems to want these excerpts struck based only on a technicality.  The Court need not decide whether this is a proper basis for these excerpts to be stricken because they played no role in its analysis of Pohl's Motion for Partial Summary Judgment [411].  Instead, the Court relied on Plaintiffs' own depositions in finding that

parts of the motion should be granted.  Therefore, Precision's Motion to Strike Pohl's Evidence [446] will be **denied as moot**.

## V.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Seymour's Motion for Summary Judgment [396] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Rusnak's Motion for Summary Judgment [409] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Pohl's Motion for Partial Summary Judmgnet [411] is **granted in part** and **denied in part**.

It is **granted** in that compensatory damages for Plaintiffs' claims of breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing will be capped at the percentages of attorney's fees outlined in the contracts.

It is **denied** in that the assignment to Precision is not found to be an invalid champertous assignment.

IT IS FURTHER ORDERED AND ADJUDGED that Precision's Motion for Partial Summary Judgment [414] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Williamson's Motion for Summary Judgment [418] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Pohl's Motion to Strike Precision's Evidence [445] is **denied as moot**.

IT IS FURTHER ORDERED AND ADJUDGED that Precision's Motion to Strike Pohl's Evidence [446] is **denied as moot**.

SO ORDERED AND ADJUDGED on this the ___6th___ day of March, 2017.

    s/Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE